Sterling Leroy OSBORN, Petitioner,

v.

The DISTRICT COURT, FOURTEENTH JUDICIAL DISTRICT, and John J. Wilkinson, one of the Judges thereof, Respondents.

PEOPLE of the State of Colorado, ex rel. Terrance FARINA, District Attorney in and for the Twenty-First Judicial District of the State of Colorado, Petitioner,

v.

The DISTRICT COURT In and For the TWENTY–FIRST JUDICIAL DISTRICT, and William M. Ela, One of the Judges Thereof, Respondents.

Nos. 80SA205, 80SA164.

Supreme Court of Colorado.

Oct. 6, 1980.

Rehearing Denied Oct. 27, 1980.

---

**5.** Section 18 3 208, C.R.S.1973 (now in 1978 Repl. Vol. 8), provides:

"[a] person who recklessly engages in conduct which creates a substantial risk of serious bodily injury to another person commits reckless endangerment, . . . ."

**6.** The defendant contends that the jury also should have been instructed on the lesser non-included offense of prohibited use of a weapon, section 18-12 -106(1)(a), C.R.S. 1973 (now in 1978 Repl. Vol. 8). It is not clear from the record whether the defendant tendered an instruction on the offense. It is clear, however, that the defendant did not preserve the issue in his motion for a new trial, and therefore, we do not consider it. *People v. Stephens,* 188 Colo. 8, 532 P.2d 728 (1975).

Norton Frickey, Denver, for petitioner.

Carroll E. Multz, Dist. Atty., Gregory F. Long, Asst. Dist. Atty., Hot Sulphur Springs, for respondents.

Terrance Farina, Dist. Atty., Stephen K. ErkenBrack, Deputy Dist. Atty., Grand Junction, for petitioner.

Wade H. Eldridge, Denver, for respondents.

Andrew A. Vogt, Denver, for amicus curiae, Colorado District Attorneys Council.

J. Gregory Walta, Susan L. Fralick, Denver, for amicus curiae, Colorado State Public Defender.

ERICKSON, Justice.

Two original proceedings provide the foundation for this opinion. The issue before us in both cases centers on disqualification of a lawyer because of ethical requirements that (1) a lawyer must protect his client's confidences and secrets [1] and (2) a lawyer must avoid even the appearance of professional impropriety.[2] In each of these cases, motions were granted in the district court [3] which disqualified the lawyers for the defense in one instance, and the prosecution in the other. Review of these rulings was sought in this Court by the disqualified lawyers, who seek writs of prohibition. We issued a rule to show cause in each case. We have consolidated the two cases, which involve the same issue, so that they may both be addressed in this opinion.

Because the facts are significantly different, we will consider the cases separately.

### Osborn v. District Court

On January 22, 1976, a complaint and information was filed in the County Court of Routt County charging Sterling Leroy Osborn with first and second degree sexual assault upon his stepdaughter. Osborn was convicted of both charges in April 1977.

Carroll E. Multz, the District Attorney for the Fourteenth Judicial District, and his chief trial deputy, Douglas A. Caloric, had primary responsibility for prosecuting Osborn. Also involved in the prosecution was Donna A. Salmon, a deputy district attorney. While the extent of Salmon's involvement is a matter of disagreement, it is clear from the record that she assisted in the initial interviews of the victim, the defendant's wife, the two arresting officers, and other important prosecution witnesses. Salmon shared an office with Multz and had a number of conversations with him about the case in the course of its preparation. In addition, Salmon had an extended relationship with the victim, and interviewed her regarding the alleged rape and other matters relating to her conduct as a juvenile. Some of the information which she obtained as a deputy district attorney would be of great value in the defense of the sexual assault charges against Osborn.

On October 1, 1977, Salmon entered private practice, joining the law firm of Norton Frickey and Associates. The Frickey firm, which did not represent Osborn during the first trial, was the firm which Osborn retained to represent him in the appeal of his conviction. Not even a suggestion has been made that the Frickey firm was involved in professional misconduct in hiring Salmon. On the contrary, conscientious precautions were taken to avoid any ethical difficulties. Prior to Salmon's employment, Norton Frickey telephoned the district attorney and asked him if he perceived any conflict of interest or ethical problem in having Salmon assist in the preparation of Osborn's appellate brief. The district attorney stated that he saw no problem with Salmon participating in the appellate proceedings.

Osborn's conviction was reversed on appeal, and a new trial was ordered. Osborn retained the Frickey firm to represent him

---

1. "A Lawyer Should Preserve the Confidences and Secrets of A Client." A.B.A. Code of Professional Responsibility, Canon 4. The Code of Professional Responsibility, its Canons and Disciplinary Rules are hereinafter referred to, respectively as Code, Canon, and DR.

2. "A Lawyer Should Avoid Even the Appearance of Professional Impropriety." Canon 9.

3. *Osborn v. District Court* is appealed from the District Court in and for the Fourteenth Judicial District, Wilkinson, J. *People ex rel. Terrance Farina v. District Court* is appealed from the District Court in and for the Twenty–First Judicial District, Ela, J.

at the new trial. On March 27, 1980, Gregory Long, an assistant district attorney, brought into question the propriety of the continued representation of Osborn by the Frickey firm. On April 22, 1980, following a hearing, the district court ordered the disqualification of Salmon and the entire Frickey firm. The district court found that "continued representation of the defendant [Osborn] by Norton Frickey or any member of his firm would be a violation of Canon 9 of the Code of Professional Responsibility...."

■ Osborn argues that the district court found Salmon's participation in his prosecution to be "minute," and that minute participation is not sufficient to justify disqualification. We reject the argument.

It is true that the district court judge did state orally during the hearing on motions that he had "no question ... that any participation that ... [Salmon] had in this case was minute." On reflection and after reviewing the record, however, the judge apparently changed his mind. In his written order of April 28, 1980, Judge Wilkinson listed Salmon's involvement in the prosecution and found it to be sufficient to require disqualification. Nowhere in that order is Salmon's involvement referred to as "minute;" on the contrary, the tenor of the order is to the effect that Salmon's participation was substantial.

■ The relevant provision on disqualification of a former government attorney is DR 9–101(B) which provides that "[a] lawyer shall not accept private employment in a matter in which he had *substantial responsibility* while he was a public employee." (Emphasis supplied.) For guidance as to what constitutes "substantial responsibility," we look to Opinion 342 of the American Bar Association Committee on Professional Ethics. In the view of that committee, there must be "a responsibility requiring the official to become personally involved to an important, material degree, in the investigative or deliberative processes regarding the transactions or facts in question."

We view Salmon's participation in the prosecution of Osborn as amounting to "substantial responsibility." She took part in the interview of the victim, the arresting officers, and many other important prosecution witnesses. Most importantly, Salmon had an ongoing relationship with the victim, who was then a juvenile undergoing a number of problems which required extended supervision. The advantage that such a relationship could give a defense lawyer on cross–examination of the victim is obvious.

■ The trial judge based his disqualification order on Canon 9, ruling that continued representation of Osborn by the Frickey firm would raise an appearance of impropriety. There is little doubt that public confidence in the legal profession would be undermined if lawyers were free to take part in both the prosecution and defense of a criminal case.[4] We note that even if Salmon did not receive confidential information regarding this case while associated with the district attorney, the appearance of impropriety is indisputable. Disqualification of Salmon under Canon 9 was clearly appropriate.[5]

---

**4.** *See* Kaufman, *The Former Government Attorney and the Canons of Professional Ethics*, 70 Harv.L.Rev. 657, 659–60 (1957).

**5.** Our decision today rests solely on Canon 9 because Salmon's former employment, out of which the conflict arises, was with the government as a deputy district attorney. Canon 4, dealing with the preservation of a client's confidences and secrets, is not directly applicable since it is premised on the existence of an attorney–client relationship. *See* Comment, *The Chinese Wall Defense to Law–Firm Disqualification*, 128 U.Penn.L.Rev. 677, 681 (n. 18) (1980). However, even though the relationship between Salmon and the prosecution witnesses with whom she dealt (including the victim) did not rise to the level of attorney–client, we note that certain information made known to a government attorney must remain confidential. At the very least, confidential information made known to Salmon while she was employed with the government should not be allowed to be used to the benefit of Osborn and to the detriment of the State now that Salmon has entered private practice. *See* Comment,

■ Osborn next contends that even if Salmon was properly disqualified, it was not necessary to disqualify the entire Frickey firm. We are well aware of the current trends regarding the erection of a so–called "Chinese Wall," [6] between two divisions of a law firm. However, in this case we are aware of no attempt on the part of the Frickey firm to "wall off" Salmon to prevent the dispersion of any privileged information she may have to the other members of the firm. To the contrary, Salmon has apparently worked at some length with other members of the Frickey firm in the preparation of Osborn's appeal. It is clear that she has had ample opportunity to share any information she may have with other members of the firm.

DR 5–105(D) contains the relevant rule: "If a lawyer is required to decline employment or to withdraw from employment under a Disciplinary Rule, no partner, or associate, or any other lawyer affiliated with him or his firm, may accept or continue such employment." This rule recognizes the fact that an attorney will frequently discuss his cases with other members of his firm. Thus, the knowledge of one attorney must be imputed to the lawyers with whom

he practices.[7] Since a private firm is involved, we conclude that Judge Wilkinson acted properly when he disqualified the entire Frickey firm.[8]

■ Disqualification of the, Frickey firm does not deny Osborn his constitutional right to counsel. As we said in *People v. Blalock*, Colo., 592 P.2d 406 (1979), the right to counsel is absolute, but there is no right to a particular counsel. This is especially true where continued representation of the defendant by a particular attorney or firm would create ethical conflicts.

■ Finally, Osborn argues that the State is estopped from objecting to his representation by the Frickey firm. He points to the fact that the District Attorney knew as early as October 9, 1979, that the Frickey firm had been retained to represent Osborn. No objection was raised until March 27, 1980, more than six months later.

We reject Osborn's estoppel argument. We agree with the trial court that "[t]here is a large difference in the handling of an appeal … and a trial on the merits." The District Attorney did not object to Salmon's participation in Osborn's appeal because on

---

*Business as Usual: The Former Government Attorney and ABA Disciplinary Rule 5–105(D),* 28 Hast.L.J. 1537, 1551–52 (1977). *See also, United States v. Ostrer,* 597 F.2d 337 (2d Cir. 1979).

**6.** *See* Comment, 128 U.Penn.L.Rev. 677 (1980), *supra,* note 5.

Because no attempt was made here to construct a Chinese Wall, we do not consider whether such a procedure would have sufficiently protected against the spread of privileged information from Salmon to the rest of the attorneys in the Frickey firm. *Compare, Armstrong v. McAlpin,* 625 F.2d 433 (2d Cir. 1980) with *Cheng v. G. A. F. Corp.,* 631 F.2d 1052, 49 U.S.L.W. 2194 (2d Cir. 1980).

**7.** In its amicus brief to this Court, the Colorado District Attorneys Council raises the problem of former public defenders who now serve as district attorneys. Because the state public defender system is viewed as a single law office, the Council hypothesizes, all former deputy public defenders employed at the time that a particular defendant was represented by that office could be disqualified from subsequently prosecuting the defendant pursuant to DR 5–105(D), even though at the time of his employ-

ment with the public defender's office, the public defender, turned prosecutor, had no personal knowledge of the defendant's case. The Council is concerned that applying DR 5–105(D) still further, the disqualification of a former public defender now working in the office of a district attorney could require the disqualification of the entire office of that prosecutor.

**8.** In our view, a distinction must be drawn between an attorney in private practice with a traditional law firm and an attorney associated with a large public or governmental agency. Judge Irving Kaufman of the Second Circuit, articulated the difference in his article in the Harvard Law Review:

"[W]here an attorney has worked for a vast government agency it is unreasonable to hold that an appearance of evil can be found in his undertaking a case against the government if there is not some closer factual relationship between his former job and the pending litigation than that the same vast agency is involved." Kaufman, *supra,* note 4.

*See also* Comment, 128 U.Penn.L.Rev. 677 (1980), *supra,* note 5, at 696, 712–13.

appeal the parties are "locked in" to the facts contained in the trial record. None of the confidential information Salmon may have possessed could unfairly affect the appeal process. Retrial on the merits is a different matter. There, Salmon's knowledge could unfairly benefit Osborn.

The State's objection to the continued representation of Osborn by the Frickey firm was made early in the retrial proceedings. In no sense can the State's motion be viewed as a hindering or delaying tactic. *Compare, Redd v. Shell Oil Co.*, 518 F.2d 311 (10th Cir. 1975) (motion to disqualify counsel in an antitrust action filed three days before trial date).

The trial judge properly ordered disqualification of the Frickey firm, and we discharge our rule to show cause in the Osborn case.

### People ex rel. Terrance Farina v. District Court

In *People ex rel. Terrance Farina v. District Court*, the district court ordered the disqualification of the District Attorney for the Twenty–First Judicial District, Terrance Farina, and his entire staff.

██ Thirteen years ago, in 1967, Richard Otis Jensen was charged with disorderly conduct. At that time Jensen retained Terrance Farina, than an attorney in private practice, to defend him. Jensen now alleges that in the course of preparing that defense, he disclosed certain confidential information regarding his behavior to Farina. The 1967 charge against Jensen was ultimately dismissed without trial or entry of a plea.

Jensen now stands charged with second degree burglary, second degree assault, third degree assault, and felony menacing. Farina is now the District Attorney for the Twenty–First Judicial District, with the duty to prosecute Jensen on the new charges. On motion by Jensen, the district court found that "[t]he appearance of a conflict is apparent" and disqualified his entire staff. A special prosecutor was appointed. In our view, the district judge acted with an excess of caution [9] in disqualifying Farina.

The trial judge found that Farina's participation in the prosecution of Jensen raised an appearance of impropriety in violation of Canon 9. In the same sentence, however, the judge stated that there was no showing of "bad faith or specific disadvantage to the Defendant from allowing the District Attorney to prosecute." In essence, the trial judge found that the public might perceive impropriety even though none in fact existed. We disagree.

██ The proper standard for disqualification under Canon 9, in our view, is whether a reasonable appearance of impropriety exists. To make that determination, a careful case by case review of the facts is necessary. In this case, where the two incidents arose from entirely unrelated transactions and are separated by nearly thirteen years, no reasonable appearance of impropriety exists.

Canon 4, which the trial judge apparently relied on in ordering the district attorney's disqualification, is not applicable here. Canon 4 states: "A Lawyer Should Preserve the Confidences and Secrets of a Client."

██ The prevailing rule is that where an attorney–client relationship has been shown to have existed, it will be presumed that confidences were reposed. *T. C. Theatre Corp. v. Warner Bros. Pictures*, 113 F.Supp. 265, 268 (S.D.N.Y.1953). *See, e. g., Schloetter v. Railoc, Inc.*, 546 F.2d 706 (7th Cir. 1976); *In re Yarn Processing Patent Validity Litig.*, 530 F.2d 83 (5th Cir. 1976); *American Roller Co. v. Budinger*, 513 F.2d 982 (3d Cir. 1975); *Emle Indus. Inc. v. Patentex, Inc.*, 478 P.2d 562 (2d Cir. 1973). Under Canon 4, an attorney must be disqualified if it is shown that the controversy involved in the pending case is "substantially related" [10] to a matter in which the attor-

---

9. *See* Kaufman, *supra*, note 4.

10. The expression "facts of which are somewhat interwoven," was used in *Roberts v. People*, 11 Colo. 213, 17 P. 637 (1888). In our view, the *Roberts'* test is equivalent to the "substantially related" standard.

ney previously represented another client. *T. C. Theatre Corp. v. Warner Bros. Pictures, supra.*

 In the present case, it is not disputed that Farina represented Jensen in 1967. We must therefore presume that confidences were reposed. The question we then confront is whether the present prosecution is "substantially related" to the earlier case in which the relationship existed.

In *Silver Chrysler Plymouth, Inc. v. Chrysler Motor Corp.*, 518 F.2d 751, 760 (2d Cir. 1975), overruled on other grounds, *Armstrong v. McAlpin*, 625 F.2d 433 (2d Cir. 1980), the concurring opinion of Judge Adams developed a set of criteria for determining what is required for two legal matters to be "substantially related." Judge Adams pointed to the similarities between the two factual situations and the legal questions posed. Applying this analysis, we find that the factual settings of the two cases are significantly different: the 1967 matter arose from a disturbance in a bar owned by Jensen's mother while the pending prosecution is in connection with an alleged burglary. Although both incidents involved acts of violence, it can hardly be said that they are "substantially related." This is particularly so in light of the fact that they are separated by nearly thirteen years.

 We find Jensen's bald assertion that he made confidential statements to Farina during the existence of the attorney–client relationship insufficient to warrant disqualification of the district attorney. We said in *Wheeler v. District Court*, 180 Colo. 275, 504 P.2d 1094 (1973); "[w]hen one seeks to disqualify a prosecuting attorney ... it is incumbent upon him to establish facts from which the trial court may reasonably conclude that the accused will probably not receive a fair trial to which he is entitled." *See also Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). We find that Jensen has not met that burden.

The trial court erred in ordering the disqualification of the district attorney, and we now make our rule to show cause absolute in the Farina case.