In re the PEOPLE of the State of Colorado, Plaintiff.

v.

Rodricke SHARI, Defendant.

No. 08SA383.

Supreme Court of Colorado, En Banc.

March 30, 2009.

Scott W. Storey, District Attorney, First Judicial District, Donna Skinner Reed, Chief Deputy District Attorney, Golden, Colorado, Attorneys for Plaintiff.

Douglas Wilson, Colorado State Public Defender, Frances Smylie Brown, Chief Deputy Public Defender, Denver, Colorado Attorneys for Defendant.

Samler & Whitson, P.C., Hollis A. Whitson, Denver, Colorado, Attorneys for Alternate Defense Counsel.

Justice RICE delivered the Opinion of the Court.

This original proceeding arises out of the People's motion for conflict-free counsel seeking to disqualify the defendant's public defenders from continuing to represent him. The People allege that the prior representation of three of their witnesses by attorneys within the Office of the State Public Defender creates a conflict warranting disqualification of the entire Public Defender's Office and the appointment of Alternate Defense Counsel. The defendant and the Office of Alternate Defense Counsel counter that no such conflict exists because neither individual attorney involved in this case participated in the prior representation of witnesses.

We issued a rule to show cause, and we now make that rule absolute, holding that the trial court abused its discretion by disqualifying the entire Office of the State Public Defender from this case.

### I. Facts & Procedural History

The defendant, Rodricke Shari, was charged with three counts of first degree murder, three counts of crimes of violence, two counts of first degree burglary, and one count of aggravated robbery after allegations that he caused the death of a woman during the course of a burglary and robbery between May 1, 2008 and May 2, 2008. Shari was represented by two public defenders out of the Golden branch of the Office of the State Public Defender—Rex Hegyi and Daniel G. Katz.

A preliminary hearing was set for October 8, 2008. However, the People filed a motion for conflict-free counsel, alleging that Hegyi and Katz should not be permitted to represent Shari. Defense counsel filed a response, and the October 8 hearing was limited to that issue.

The People alleged that the entire Office of the State Public Defender, including Hegyi and Katz, should be disqualified from representing Shari in this case because of the Office's prior representation of the People's three primary witnesses against Shari. The trial court recognized that neither Hegyi nor Katz was individually involved in any of the

three witnesses' cases. However, because other attorneys within the Public Defender's Office had represented the witnesses, the trial court disqualified Hegyi and Katz from representing Shari and appointed alternate defense counsel.

The alleged conflict arose out of the Public Defender's Office's prior representation of three witnesses for the People—Lee Jackson, Cheriece Knox, and Brian Levy. Jackson had been Shari's cellmate after Shari was arrested in this case, and Jackson relayed the contents of a conversation he had with Shari to the prosecution. Shari allegedly told Jackson that he was angry with the victim because she was dating other men and had not satisfied a drug debt she owed him. Shari also allegedly stated that he followed the victim home and killed her with a knife and then stole money from her residence.

Knox and Levy told prosecutors that they saw Shari at around 1:30 a.m. on May 2, 2008, when they were walking along Colfax Avenue in Lakewood. Shari drove up to them and asked Levy to help him obtain some crack cocaine. The two witnesses said Shari had scratches on his face and a large cut on his hand. They got him some cocaine and took him to a hotel to clean up. They had to go to several different hotels because Shari did not want to go anywhere he might be recorded on a video camera. He told them that the police were after him and that he thought he had "killed a dude." Knox said Shari had black gloves in his car.

Jackson was represented by the State Public Defender's Office in five previous cases between 2000 and 2002. All five cases were prosecuted in Jefferson County, and attorneys at the Golden office of the Public Defender worked on each case. Some of those attorneys are still with the Golden office, some have relocated to other offices of the Public Defender, and some are no longer working as public defenders.

Knox was represented by the State Public Defender's Office in three cases between 2000 and 2003. No attorney employed in the Golden office was involved in any of those cases.

Levy was represented by the State Public Defender's Office in eight cases between 1995 and 2008. Four of the cases were prosecuted in Arapahoe County, and four were prosecuted in Denver County. Seven of the eight cases were closed at the time of the trial court's order disqualifying Hegyi and Katz. The eighth case was filed on July 29, 2008 in Denver—two months after Shari was arrested and three months before the hearing on the motion for conflict-free counsel. An attorney from the Denver office of the Public Defender appeared with Levy in the Denver drug court on July 31, 2008. Levy was sentenced to two years of drug court probation. He later failed to appear for a review hearing and was subsequently arrested. No public defender entered any further appearances on Levy's behalf after the July 31 probation sentence was entered, and a formal motion to withdraw was filed on October 9, 2008.

The Public Defender's Office enforces an extensive conflict of interest policy.[1] Pursuant to the policy, no information relating to the representation of a client may be transferred between regional offices, though confidential information is sometimes shared among attorneys within the same regional office when necessary to prepare a client's case.

As a result, the policy includes provisions requiring withdrawal where attorneys within the same regional office are currently representing both a defendant and a witness against that defendant. Where a defendant is being represented by an attorney within one regional office, and a witness against that defendant is a current client of another regional office, withdrawal is only required where there is a significant risk that representation will be materially limited.

The policy also notes that a conflict may exist where a witness against a defendant being represented by a public defender was formerly a client of the Public Defender's Office. In these cases, the policy only per-

---

1. Response to Court's Order Re: Motion for Conflict Free Counsel at Exhibit A, *People v. Shari,* No. 08CR1421 (Nov. 18, 2008).

mits the use of impeachment material that can be gained "from sources independent of any confidential communications of the former client." The policy prohibits access "to inspect closed file(s) of a client who is now a victim or prosecution witness."

The trial court, finding a conflict of interest imputed to the entire Public Defender's Office, disqualified all attorneys employed by the Office, including Hegyi and Katz, and appointed Alternate Defense Counsel. Alternate Defense Counsel petitioned this court for relief pursuant to C.A.R. 21.

## II. Standard of Review

The decision to disqualify counsel generally lies within the broad discretion of the trial court. *People v. Harlan,* 54 P.3d 871, 877 (Colo.2002). We review a disqualification order for abuse of discretion. *Id.; see also* § 21–2–103, C.R.S. (2008) (giving trial court discretion to appoint Alternate Defense Counsel where public defender has a conflict of interest).

## III. Conflict of Interest Rules

An attorney can be disqualified on the basis of a conflict of interest in two distinct ways. First, the attorney may have a direct conflict that prohibits continued representation. Second, the attorney may be associated with another conflicted attorney, and that conflict may be imputed to all associated attorneys. We discuss each in turn, and conclude that no conflict, direct or imputed, existed in this case to disqualify Hegyi and Katz from representing Shari.

**2.** Rule 1.7 states in relevant part:

(a) ... [A] lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
(1) the representation of one client will be directly adverse to another client; or
(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer.
Colo. RPC 1.7.

**3.** Rule 1.9 states in relevant part:

(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent

## A. Direct Conflicts of Interest

The Sixth Amendment's guarantee of effective assistance of counsel encompasses a defendant's right to conflict-free counsel. *People v. Martinez,* 869 P.2d 519, 524 (Colo. 1994) (citing *Holloway v. Arkansas,* 435 U.S. 475, 483–84, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978)). A defendant's Sixth Amendment rights "can therefore be violated by 'representation that is intrinsically improper due to a conflict of interest.'" *Dunlap v. People,* 173 P.3d 1054, 1070 (Colo.2007) (quoting *People v. Castro,* 657 P.2d 932, 943 (Colo.1983)). While judges must be cognizant of potential conflicts when appointing counsel to indigent defendants, the mere "possibility of a conflict is insufficient" to establish a Sixth Amendment violation. *Cuyler v. Sullivan,* 446 U.S. 335, 350, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).

An attorney's duties to current and former clients are governed by the Colorado Rules of Professional Conduct. Rule 1.7 outlines the duties owed by an attorney to current clients.[2] In order for a Rule 1.7 conflict to exist, the same attorney must represent two clients with adverse interests, or the attorney's representation of one client must create a significant risk of materially limiting the representation of the other client. Colo. RPC 1.7.

Similarly, Rule 1.9 explains a lawyer's duties to former clients.[3] A lawyer who has represented a client may not later represent another client in a substantially related mat-

another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.
(b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client
(1) whose interests are materially adverse to that person; and
(2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter; unless the former client gives informed consent, confirmed in writing.
Colo. RPC 1.9.

ter where the new client's interests are materially adverse to the former client's interests without getting informed consent from the former client. Colo. RPC 1.9. In addition, without getting the former client's informed consent, a lawyer associated with a firm that formerly represented a client may not later represent a new client with interests materially adverse to the former client if the lawyer acquired material, confidential information from the former client. *Id.*

In the event that a public defender appointed to represent a client is unable to continue representation due to a conflict of interest, alternate defense counsel is to be appointed. § 21–2–101, C.R.S. (2008). For purposes of the Alternate Defense Counsel statute, a conflict of interest includes "circumstances in which the state public defender represents a codefendant or a person who is a witness in the case . . . ." § 21–2–103(1)(c), C.R.S. (2008). Consistent with the statute, this court has recognized that a conflict may arise when a defense attorney has previously represented (or is currently representing) one of the prosecution's witnesses. *Dunlap,* 173 P.3d at 1070. The conflict arises as a result of the duty of confidentiality owed by the attorney to the former client. *Id.* The existence of this duty may hinder the attorney's ability to cross-examine the former-client-turned-witness testifying against the current client, violating the attorney's duty to zealously represent the current client. *Id.* In addition, "[t]here is little doubt that public confidence in the legal profession would be undermined if lawyers were free to take part in both the prosecution and defense of a criminal case." *Osborn v. Dist. Ct.,* 619 P.2d 41, 45 (Colo.1980). For these reasons, we often find a conflict where an individual defense attorney has previously represented or is currently representing a prosecution witness or other party involved in the case against the defendant. *See, e.g., People ex rel. Peters v. District Court,* 951 P.2d 926, 928 (Colo.1998) (disqualifying two defense attorneys because one of them was currently representing a prosecution witness and had previously represented a person the defense

identified as an alternate suspect); *Rodriguez v. Dist. Ct.,* 719 P.2d 699, 704 (Colo. 1986) (finding waivable conflict where public defender previously represented prosecution's witness); *Castro,* 657 P.2d at 932 (disqualifying public defender who was simultaneously representing defendant and district attorney prosecuting defendant); *Allen v. Dist. Ct.,* 184 Colo. 202, 206, 519 P.2d 351, 353 (1974) (reversing trial court's denial of public defender's motion to withdraw where public defender was simultaneously representing prosecution's witness).

■■ It is clear, then, that in order for a direct conflict to exist, the same individual attorney must be involved in both cases simultaneously, or the allegedly conflicted attorney must have received confidential, material information from the former client. That is not the case here. The only potential Rule 1.7 conflict would be with regard to the representation of Levy, who arguably had an open case being handled by the Office of the State Public Defender while Shari's case was proceeding. However, the Denver public defender who handled the Levy case—and made no appearance on Levy's behalf after July 31, 2008—is in no way involved in the Shari case, and neither Katz nor Hegyi had any involvement in Levy's case.

There are also potential Rule 1.9 conflicts involving representation of all three prosecution witnesses; Jackson, Levy, and Knox can all be considered "former clients" of the Office of the State Public Defender. But, as is the case with the potential Rule 1.7 conflict, none of the individual public defenders involved in representing these "former clients" is involved in the Shari case, and neither Katz nor Hegyi participated in any of the prior cases. As the trial court pointed out, there is no reason to think that either Katz or Hegyi obtained any confidential, material information.[4] As a result, no direct conflict existed warranting disqualification of Katz and Hegyi from representing Shari.

---

**4.** Any potential concern about the transfer of confidential information is lessened by the Public

Defender's Office's extensive screening system.

## B. Imputed Conflicts of Interest

 Because neither Hegyi nor Katz had a direct conflict in this case, they will be disqualified from representing Shari only if the direct conflicts that may exist among other attorneys could somehow be imputed to them. Conflicts particular to individual lawyers within a firm can, in certain circumstances, be imputed to the entire firm. Colo. RPC 1.10. However, Rule 1.10 specifically states that "[t]he disqualification of lawyers associated in a firm with former or current government lawyers is governed by Rule 1.11." [5] *Id.* Rule 1.11, in turn, subjects government lawyers to Rules 1.7 and 1.9. The comments to Rule 1.11 make clear that a government attorney's individual conflicts are not imputed to the entire government agency for which he works. [6] In accordance with Rule 1.11, we have recognized that "a distinction must be drawn between an attorney in private practice with a traditional law firm and an attorney associated with a large public or governmental agency." *Osborn,* 619 P.2d at 46 n. 8. [7]

As discussed above, the individual public defenders who previously represented the Shari prosecution's three witnesses could potentially be conflicted out of participating in Shari's defense. However, because neither Katz nor Hegyi was involved in those prior representations, and because the conflicts involving those other individual public defenders cannot be imputed to Katz and Hegyi pursuant to Rule 1.11, no conflict exists that warrants disqualifying Hegyi and Katz from representing Shari.

We also note that any concerns regarding the communication of confidential information from the public defenders who previously represented the prosecution's witnesses to Hegyi and Katz are assuaged by the screening policy, noted above, in effect throughout the Public Defender's Office. The trial court recognized the policy's existence and "assume[ed] ... [its] success," but then questioned whether Hegyi and Katz would nevertheless "feel free to consult the courthouse files in the three prosecution witnesses' sixteen cases looking for material or leads to material that can be used to discredit them." In so stating, the court acknowledged the Public Defender's Office's adherence to the rule that government attorneys should generally be screened to avoid conflicts. However, the court then essentially assumed that Hegyi and Katz would violate the screening policy and imputed any potential conflicts to them, ignoring Rule 1.11's command that conflicts are not automatically imputed among associated government attorneys. Colo. RPC 1.11, cmt. 2.

Through its reliance on precedent referring to the now obsolete Code of Professional Conduct, its failure to appropriately apply Rule 1.11, and its disregard for the Public Defender's Office's extensive screening policy, we conclude that the trial court abused its

---

5. All the parties have proceeded on the assumption that public defenders are "government attorneys" under Rule 1.11, and we do so as well.

6. The comments to Rule 1.11 state in relevant part:

> Rule 1.10 is not applicable to the conflicts of interest addressed by this Rule. Rather, paragraph (b) sets forth a special imputation rule for former government lawyers that provides for screening and notice. *Because of the special problems raised by imputation with a government agency, paragraph (d) does not impute the conflicts of a lawyer currently serving as an officer or employee of the government to other associated government officers or employees,* although ordinarily it will be prudent to screen such lawyers.

Colo. RPC 1.11, cmt. 2 (emphasis added).

7. The trial court found that "the rule of imputed disqualification has been applied to public defenders in some circumstances." The court cited to *McCall v. District Court,* 783 P.2d 1223, 1227 (Colo.1989) to support this proposition. While we did say in *McCall* that "'[t]he rule of imputed disqualification applies to both private law firms and public law firms, such as a district attorney's office," 783 P.2d at 1227, that case was applying the Code of Professional Conduct, which has been superseded by the Colorado Rules of Professional Conduct. *People v. Witty,* 36 P.3d 69, 72 (Colo.App.2000). Both the Rules and our subsequent cases make clear that conflicts are no longer automatically imputed among government attorneys. *See* Colo. RPC 1.11, cmt. 2; *Osborn v. Dist. Ct.,* 619 P.2d 41, 46 n. 8 (Colo.1980). We have recently re-affirmed this principle with respect to district attorneys. *People v. Perez,* 201 P.3d 1220, 1231 (Colo.2009)("Even assuming [the attorney's] prior representation of Perez created a conflict, it would not automatically be imputed to the entire DA's Office under Rule 1.11....").

discretion in disqualifying the entire Public Defender's Office, including Katz and Hegyi.

## IV. Waiver of Right to Conflict-free Counsel

 Even if a conflict did exist with regard to Hegyi's and Katz's representation of Shari in this case, Shari waived the conflict. We have established a four-part balancing test for the waiver of the right to conflict-free counsel, weighing "(1) the defendant's preference for particular counsel; (2) the [prosecution] witness' [sic] right to confidentiality of communications; (3) the public's interest in maintaining the integrity of the judicial process; and (4) the nature of the particular conflict of interest involved." *Dunlap*, 173 P.3d at 1070 (alteration in original).

### A. Defendant's Counsel of Preference

 A defendant's choice of counsel is a decision that should be respected where possible. *In re Estate of Myers*, 130 P.3d 1023, 1025 (Colo.2006) ("[W]e have emphasized the ... importance, in both the criminal and civil contexts, of continued representation of parties by counsel of their choice."). While a defendant's Sixth Amendment right to counsel does not guarantee the right to select his appointed counsel, "once counsel is appointed, the attorney-client relationship is no less inviolable than if the counsel had been retained by the defendant." *Harlan*, 54 P.3d at 878 (internal quotation marks omitted). As a result, there is "a presumption in favor of a defendant's choice of counsel," and "[a] defendant's desire for continued representation by a court-appointed public defender is 'entitled to great weight.'" *Id.* (quoting *Rodriguez*, 719 P.2d at 707). To that end, "disqualification is a severe remedy that should be avoided whenever possible." *Estate of Myers*, 130 P.3d at 1025.

 As discussed above, a defendant's Sixth Amendment right to effective assistance of counsel includes the right to conflict-free counsel. *Martinez*, 869 P.2d at 524 (citing *Holloway*, 435 U.S. at 483–84, 98 S.Ct. 1173). However, "[i]t is well established ... that a defendant can waive the right to conflict-free counsel so long as the waiver is

voluntary, knowing, and intelligent." *Dunlap*, 173 P.3d at 1070. In order to effectively waive his right to conflict-free counsel, "a defendant must be fully advised of existing or potential conflicts." *Martinez*, 869 P.2d at 525.

The trial court engaged in the following colloquy with Shari regarding the possibility of a conflict of interest in his case:

THE COURT: [A]ssuming that the People present these witnesses against you in this case, and it's pretty obvious to me that they will because they consider these people to be critical witnesses, assuming that they do, I as Judge presume that your lawyers whomever they are whether it's Mr. Katz, Mr. Hegyi or someone else as part of representing you zealously, would do whatever they can to attack the credibility of these witness' [sic] testimony.... That means, they have an obligation to dig up whatever they can on these people and to use it in whatever way they can to try to discredit them in front of the jury. It would be digging up information and discrediting these people, whom the Public Defender's [O]ffice, apparently even including some of the other Public Defenders here in Golden, have represented in the past. Do you feel comfortable in those circumstances having these people represent you?

THE DEFENDANT: Yes.

THE COURT: The alternative is that the Court can and would appoint another counsel, someone, one or more lawyers, who have previous experience and ability in murder cases to represent you. Someone who has no prior contact with these three witnesses and that would be at state expense, no charge. Now, what is your thought about this?

THE DEFENDANT: I'm fine with these two.

Shari, upon being informed of the potential for conflict and the availability of alternate defense counsel, told the court that he preferred to continue to be represented by his current public defenders, Katz and Hegyi. This preference is entitled to great deference. *See Harlan*, 54 P.3d at 878. The

court made sure that Shari was advised of potential conflicts, and Shari chose to retain his current counsel, waiving his right to conflict-free counsel. This factor, therefore, weighs against disqualification of Katz and Hegyi.

### B. Witness's Right to Confidentiality

██ The second factor to be considered is the former-client-turned-witness's right to confidentiality in communications with his attorney. This factor is weighed less heavily than the others. *See People v. Frisco,* 119 P.3d 1093, 1095 (Colo.2005) ("[W]here the court's concern is protecting the interests of former clients rather than protecting the defendant, avoiding mistrial or reversal from later-materializing actual conflicts, or undermining public confidence in the impartiality and fairness of the process, a defendant's choice of counsel will not lightly be denied."). Nonetheless, whenever an attorney-client relationship is formed, we presume that the client reposed confidences in the attorney. *Osborn,* 619 P.2d at 47. Once the attorney-client relationship has ended, the attorney then has a duty not to use that confidential information in a manner that would be detrimental to the client. Colo. RPC 1.9. As discussed above, this creates a potential conflict when an attorney is forced to cross-examine a former client who is testifying against a current client. *See Dunlap,* 173 P.3d at 1070.

Importantly, none of the witnesses at issue in this case indicated a problem with Katz's and Hegyi's continued representation of Shari. *See Rodriguez,* 719 P.2d at 707 ("[I]t is of some significance that [the former-client-turned-witness] ... did not join the prosecution's motion to disqualify, nor has she indicated any objection to the public defender's continued representation of the [defendant]."). In addition, this is not a case where the individual attorney representing the defendant previously represented the prosecution's witness. *Cf. Dunlap,* 173 P.3d at 1070 (finding waivable conflict where defendant's public defender previously represented prosecution's witness). As a result, this factor also weighs against disqualification of Katz and Hegyi.

### C. Integrity of the Judicial Process

██ A court evaluating a motion to disqualify a defendant's counsel of choice must also consider the "paramount necessity of preserving public confidence in the integrity of the administration of justice." *Rodriguez,* 719 P.2d at 706. It is important "that trials be conducted in an evenhanded manner; that the participants in the adversary process, including witnesses, be protected from unfair tactics; and that the courts maintain the integrity of the judicial system and the highest ethical standards of the legal profession." *Id.* at 707–08. While disqualification motions are not to be granted lightly, disqualification may be appropriate "[w]hen a defendant's desire to retain a particular attorney would significantly undermine public confidence in the impartiality and fairness of the judicial process." *Id.* at 706.

The trial court relied heavily on this factor in granting the motion to disqualify, finding that allowing the Public Defender's Office to continue to represent Shari "has a ring of unfairness to the former clients." However, we have often found either no conflict or a waivable conflict in cases where the same individual attorney currently representing the defendant previously represented a prosecution witness. *See, e.g., Frisco,* 119 P.3d at 1098 (holding that trial court abused its discretion in disqualifying defense counsel who had himself previously represented prosecution's witness); *Rodriguez,* 719 P.2d at 708 (finding waivable conflict where defense counsel himself previously represented prosecution's witness). We are not persuaded by the People's argument that the possible transfer of some confidential information relating to the prior representation of the witnesses in this case necessarily results in the public impression of unfairness within the judicial process. The screening policy itself prohibits the sharing of confidential client information between regional offices, so there is no chance that any information relating to the representation of Knox or Levy could have been transferred to the Golden office. While Jackson was previously represented by attorneys in the Golden office, the policy strictly prohibits access to closed files of a

former client who is now a witness against a current client.

Because the screening policy in effect throughout the Public Defender's Office would prevent any confidential information relating to the prior representation of the People's witnesses against Shari, concerns about the integrity of the judicial process are unfounded. Therefore, this factor also weighs against the disqualification of Katz and Hegyi.

### D. Nature of the Conflict

The final factor to consider in evaluating a motion for disqualification is the nature of the conflict itself. To that end, we have distinguished between "actual" and "potential" conflicts, holding that an actual conflict requires an express waiver from the defendant, whereas a potential conflict may or may not require a formal waiver. *See Harlan,* 54 P.3d at 880. Potential conflicts include "a variety of possible scenarios, ranging from a remote possibility that the conflict may arise to a high probability that the conflict will arise." *Id.*

The trial court here acknowledged that it based its decision on "potential conflicts that ... create a risk ... that [Shari's] counsel will be materially limited in their ability to represent him." The court went on to list a variety of possible scenarios in which Shari's counsel might obtain some confidential information relating to other public defenders' prior representation of the prosecution's witnesses against Shari. Even if it could somehow be said that there was a high probability that any of these conflicts would arise and require an express waiver of the right to conflict-free counsel—and that argument is tenuous at best—Shari clearly exercised a valid waiver of that right, as discussed above. As a result, this factor, along with the other three, weighs against disqualification of Hegyi and Katz.

### V. Conclusion

We hold that no direct conflict warranting disqualification of Katz and Hegyi existed, and any direct conflict that may have existed relating to an individual public defender's prior representation of the prosecution's wit-

nesses against Shari could not be imputed to Katz and Hegyi under Rule 1.11. In addition, even if some conflict could be imputed to them, Shari voluntarily, knowingly, and intelligently waived his right to conflict-free counsel. We conclude the trial court abused its discretion in disqualifying Katz and Hegyi. We therefore make the rule absolute and remand for proceedings consistent with this opinion.

Justice COATS concurs in part and dissents in part.

Justice BENDER dissents.

Justice COATS, concurring in part and dissenting in part.

Because I too believe the trial court abused its discretion in denying the defendant his counsel of choice, I concur in the judgment of the court. Because the defendant gave his informed consent to continued representation by those counsel and there has been no suggestion of actual conflict or any showing of serious potential for actual conflict, however, I consider it wholly unnecessary to address the question of vicariously imputed conflict. Finally, because I believe the majority's uncritical treatment of deputy public defenders as "public officers or employees," despite its tepid disclaimer, *see* maj. op. at 459 n. 5, is likely to mislead attorneys and trial courts about the applicability of Colo. RPC 1.11, I disagree with that portion of its opinion in particular.

We have previously made clear that a violation of ethical rules is neither a necessary nor sufficient condition to justify disqualification of a party's chosen counsel, *see In re Estate of Myers,* 130 P.3d 1023, 1025 (Colo. 2006); but unless it would be unconstitutional to do so, an ethical rule barring representation by a particular counsel, like any other law, must be enforced by the courts. Rule 1.9 of the Colorado Rules of Professional Conduct prohibits representation by a lawyer without the permission of a former client whenever there is sufficient risk that attorney-client confidences will be used against the former client's interest. *See People v. Frisco,* 119 P.3d 1093, 1095–96 (Colo.2005).

Rule 1.7 similarly prohibits representation without the permission of one or more current clients whenever there is sufficient risk that the representation will be materially limited by the lawyer's responsibilities to other current or former clients.

Apart from specific ethical prohibitions against representation, it is also within a court's power and responsibility to disqualify attorneys when necessary to maintain judicial integrity and insure that their judgments remain intact on appeal. *Wheat v. United States*, 486 U.S. 153, 158, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988); *Frisco*, 119 P.3d at 1095. This can be the case even though a client has effectively waived his right to conflict-free representation by giving his informed consent. *Wheat*, 486 U.S. at 163, 108 S.Ct. 1692. In light of the Sixth Amendment right of criminal defendants to counsel of their choice, however, courts may decline a proffer of waiver only in the face of an actual conflict of interest or a showing of serious potential for conflict. *Id.; Frisco*, 119 P.3d at 1095; *cf. Rodriguez v. Dist. Ct.*, 719 P.2d 699, 705–06 (Colo.1986) (pre-*Wheat* analysis acknowledging need for balancing of interests but according great weight to intelligent waivers by defendant).

Former representation of prospective prosecution witnesses by the public defender presents at most a potential (as distinguished from actual) conflict. *See Wheat*, 486 U.S. at 162, 108 S.Ct. 1692; *see also People v. Harlan*, 54 P.3d 871, 878–79; *cf. Cuyler v. Sullivan*, 446 U.S. 335, 348–50, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) (requiring for actual conflict that counsel be placed in a situation where conflicting loyalties pointed in opposite directions). The trial court made no finding of serious potential for actual conflict under the circumstances of this case, and the record has not been sufficiently developed to support such a finding if it had. Nothing in the record suggests that the former representations by members of the public defender's office were substantially related to the current representation or that they involved a substantial risk that attorney-client confidences would either be improperly used against the former clients or materially limit the representation of the current defendant.

*See* Colo. RPC 1.7 and 1.9; *see also Frisco*, 119 P.3d at 1096.

In fact, aside from characterizing the prospect of former public defender clients being impeached by any deputy public defender as "troubling" or having "a ring of unfairness," the trial court offered as grounds for declining the defendant's waiver of conflict-free representation no more than its concern that he might later change his mind and revoke his waiver or challenge the effectiveness of his counsel's assistance. Although the comments to Rule 1.7 indicate that a client who has given consent to conflict-free representation may revoke that consent and, like any other client, terminate the lawyer's representation at any time, *see* Colo. RPC 1.7 cmt. 21, nothing in that statement suggests (and it is clearly not the case) that a defendant waiving conflict-free representation must therefore be entitled to delay proceedings or re-litigate matters already resolved. And with regard to challenges to the effectiveness of counsel, I consider it now firmly established that a knowing and intelligent waiver of conflict-free representation precludes a subsequent competency challenge based on that conflict. *See generally* 3 Wayne R. LaFave et al., *Criminal Procedure* § 11.9 (2d ed.1999).

Since even the majority agrees that the trial court abused its discretion in declining to accept the defendant's waiver of conflict-free representation, it has no cause to discuss the imputation of conflicts among members of the public defender's office. In choosing to proceed as it has, however, I fear the majority lends credence to a construction of the current ethical rules that I believe was not only never intended, but also makes for highly questionable public policy.

Rule 1.10 imputes, except in limited circumstances, the prohibitions against representation found in Rules 1.7 and 1.9 to all lawyers associated, or formerly associated, in a firm with a lawyer directly limited by those rules. By contrast, Rule 1.11 deals with special conflicts of government or public officers or employees; and although it similarly makes the prohibitions of Rules 1.7 and 1.9 applicable to those individual lawyers, it does not further impute the conflicts identified by them to other lawyers in the same govern-

ment or governmental agency. Notwithstanding the express inclusion of legal aid and legal services organizations within the definition of a "firm," *see* Colo. RPC 1.0 cmt. 4, whose members are subject to the provisions of Rule 1.10 governing the imputation of conflicts, the majority uncritically categorizes the Public Defender and his deputies as government or public officers or employees, as contemplated by Rule 1.11, presumably because the public defender system is funded by state government.

As has been noted elsewhere, any attempt to squeeze public defenders into the provisions of Rule 1.11 makes, at the very least, "for an uncomfortable fit." *See* Annotated Rules of Professional Conduct 185 (6th ed.2007) (citing D.C. Ethics Op. 313 (2002) (military defense counsel or public defender continuing to represent defendant after entering private practice not "accepting other employment" within meaning of rule 1.11 because client remains the individual rather than the government) ); *see also Richard B. v. State Dep't of Health & Soc. Servs.*, 71 P.3d 811 (Alaska 2003) (expressly finding public defender's office to be a firm rather than a public employee, within the contemplation of the Rules). While the text of Rule 1.11(d), referring as it does to "a lawyer currently serving as a public officer or employee," might be interpreted broadly to include public defenders, such a construction would literally stand the distinction intended by Rules 1.10 and 1.11 on its head. Although compensated by the state, public defenders do not represent the government or a public agency. Instead of working on behalf of the state, they exist for the express purpose of representing the interests of private individuals who are being prosecuted by the state.

The attorney-client relationship exists between a deputy public defender and his private client—not the government—and the lawyer's obligations of loyalty therefore run to the private client. If it were not apparent from the provisions of Rule 1.11 itself, the accompanying comments make clear that the rule is designed "to prevent a lawyer from exploiting public office for the advantage of another client," Colo. RPC 1.11 cmt. 2, and to bar a lawyer from representation that "might

affect performance of the lawyer's professional functions on behalf of the government." Colo. RPC 1.11 cmt. 4. For public defenders and lawyers representing private clients during their government service to be governed by a rule permitting the waiver of their personal conflicts by "the appropriate government agency," Colo. RPC 1.11(d), would be completely anomalous.

One obvious and immediate impact of categorizing deputy public defenders as "public officers or employees" for purposes of Rule 1.11(d) would be to deprive criminal defendants of any right to object on the grounds of concurrent conflict to representation by any deputy public defender other than one with a current or former client having adverse interests. This position would represent a complete reversal of our pre-rules determination that "confidential information obtained by one public defender must be imputed to the other members of the Public Defenders' staff." *See Rodriguez*, 719 P.2d at 704. As a policy matter, the Rules of Professional Conduct recognize that depending upon the structure of a legal aid or legal services organization, the entire organization or different components of it may constitute a firm or firms. *See* Colo. RPC 1.0 cmt 4. Whether the state Public Defender's Office should be considered a single firm or multiple firms, determined by district or some other principle of segregation and supervision altogether, it seems clear to me that the Rules of Professional Conduct contemplate, with good reason, that deputy public defenders be treated as lawyers associated in firms rather than as public officers.

I therefore object to any suggestion that deputy public defenders should be treated as public officers or employees (even though the matter is apparently left undecided by the majority) and concur only in the majority's conclusion that the trial court abused its discretion in declining to accept the defendant's informed consent to representation by his current appointed counsel.

Justice BENDER, dissenting.

Although I agree in large part with the majority's analysis of the relevant Rules of Professional Conduct, I disagree with its con-

clusion that the trial court abused its discretion when it disqualified the public defender's office. I would hold that the trial court could rationally conclude that, in view of the public defender's prior representation of three of the prosecution's key witnesses, the office's continued representation of the defendant gives rise to an appearance of impropriety warranting disqualification. I would arrive at this conclusion even though I agree with the majority that, under the circumstances of this case, such representation would not constitute a literal violation of the Colorado Rules of Professional Conduct. Hence, I respectfully dissent.

Our constitution grants the courts of this state the "inherent power to ensure both the reality and appearance of integrity and fairness in proceedings before them; and to that end, they necessarily retain the discretion to disqualify attorneys from further representation." *In re Estate of Myers*, 130 P.3d 1023, 1025 (Colo.2006); *see also People v. Palomo*, 31 P.3d 879, 882 (Colo.2001); *People v. Garcia*, 698 P.2d 801, 806 (Colo.1985). Moreover, a trial court's power to disqualify an attorney from representing a particular client is not confined to those grounds for disqualification codified in statute; a court has the constitutional authority to protect the public's confidence in the integrity of the judiciary even though no Rule of Professional Conduct has been or will be violated by the attorney's continued representation. *Myers*, 130 P.3d at 1025 (holding that "[v]iolation of an ethical rule, in itself, is neither a necessary nor a sufficient condition for disqualification"). Indeed, the Supreme Court has recognized that a court may disqualify an attorney from appearing in a particular matter, even though there has been an adequate waiver of any conflict. *Wheat v. United States*, 486 U.S. 153, 163, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). Thus, a court's power to protect against an appearance of impropriety, even where no ethical rule is implicated, may trump a criminal defendant's right to the counsel of his choice, if the appearance of impropriety is sufficiently strong. Maj. op. at 460–62; *Rodriguez v. Dist. Ct.*, 719 P.2d 699, 706–07 (Colo.1986).

As the majority acknowledges, we review a trial court's disqualification order, including one based on an appearance of impropriety, for abuse of discretion. Maj. op. at 457. As Judge Gorsuch recently explained, an appellate court reviewing a trial court's ruling under the abuse of discretion standard will reverse a district court's determination only if the court "exceeded the bounds of the rationally available choices." *Big Sky Network Canada, Ltd. v. Sichuan Provincial Gov't*, 533 F.3d 1183, 1186 (10th Cir.2008). Thus, "there will not necessarily be a single right answer, but a range of possible outcomes the facts and law at issue can fairly support; rather than pick and choose among them ourselves, [an appellate court] will defer to the district court's judgment so long as it falls within the realm of these rationally available choices." *Id.* As Judge Kane noted, an abuse of discretion occurs only where the trial judge "fails to articulate a reason for his decision and no such reason is readily apparent from the record or articulates a reason which has no basis in fact or the reason so articulated is contrary to law. The reason given, however, need not be one that is agreeable to the reviewing court." *In re Bueno*, 248 B.R. 581, 582–83 (D.Colo.2000).

The pertinent inquiry is whether the facts support the trial court's conclusion that "the public would perceive" continued representation by the public defender, under the particular circumstances of this case, "as improper and unjust, so as to undermine the credibility of the criminal process in our courts." *Palomo*, 31 P.3d at 882 (internal quotations omitted). Of course, this inquiry is highly case specific, and thus the reason the trial court is granted substantial latitude in determining whether an appearance of impropriety exists.

Given the facts of this case, I would not conclude that the trial court exceeded the bounds of "rationally available choices." The public defender's office had long term relationships with all three of the prosecution's key witnesses, representing each in multiple cases. The public defender represented Lee Jackson on five prior cases between 2000 and 2002. All of these cases were defended by lawyers in the Golden public defender's office, some of whom are still attorneys in that

office. Similarly, the public defender represented Brian Levy on eight cases between 1995 and 2008. Significantly, the public defender withdrew from representing Levy in order to represent the defendant in this case. Again, I agree with the majority that, under the Rules, there is little danger of confidence-sharing here, given the public defender's extensive screening procedures. However, I do not agree that the trial court acted irrationally in concluding that the sheer number of former clients involved in the case, as well as the public defender's abandonment of a long-term client in order to assume the representation of another, made further representation by the public defender in this case "unseemly." The trial court recited the correct legal standard and engaged in the appropriate balancing test, but, based on the facts, came to a different conclusion than the majority. In my view, this is the essence of discretion. I would let the trial court's ruling stand.

I also disagree with the majority's statement that "a government attorney's individual conflicts are not imputed to the entire government agency for which he works." Maj. op. at 459. This statement is overbroad. While this principle applies to a public defender's office, I do not believe that it applies to a district attorney's office. As I explained in my dissent to *People v. Perez*, our precedent, as well as the precedent of most other jurisdictions, imputes the conflict of an individual prosecutor to an entire district attorney's office, but treats a district attorney's office differently from a private law firm in that the district attorney's office is permitted to rebut the presumption of shared confidences through adequate evidence of either formal or informal screening. 201 P.3d 1220, 1243–46 (Colo.2009).