The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

Duane MANZANARES, Defendant–Appellee.

No. 05SA249.

Supreme Court of Colorado, En Banc.

June 26, 2006.

Bill Thiebaut, District Attorney, Tenth Judicial District, Karl S. Tameler, Chief Trial Deputy District Attorney, Steven B. Fieldman, Deputy District Attorney, Pueblo, Colorado, Attorneys for Plaintiff–Appellant.

David C. Kaplan, Colorado State Public Defender, Suzanne C. Reynolds, Deputy State Public Defender, Cobea Becker, Deputy State Public Defender, Pueblo, Colorado, Attorneys for Defendant–Appellee.

Justice RICE delivered the Opinion of the Court.

## I. Facts and Procedural History

The defendant, Duane Manzanares, was charged with murder in the first degree, section 18–3–102(1)(a), C.R.S. (2005), and assault in the first degree, *id.* section 18–3–202(1)(a), on August 5, 2005, in Pueblo County District Court. The crimes were alleged to have been committed on June 1, 2005. In early August, the defendant filed a Motion to Appoint a Special Prosecutor, which was followed two days later by a Supplemental Motion to Appoint a Special Prosecutor.

The first motion asserted that "Cecil Turner, formerly a defense attorney who represented Mr. Manzanares, is currently an employee of the District Attorney's office in Pueblo County. There is an appearance of impropriety with respect to the District Attorney's office prosecuting Mr. Manzanares." This motion was supported by an affidavit from Kristi K. Martinez, an investigator with the Pueblo regional office of the Colorado State Public Defenders, in which she stated that, based upon a review of court records, Cecil Turner had represented the defendant in three prior criminal cases.

The supplemental Motion to Appoint a Special Prosecutor asserted that "Doug McMillen, formerly an employee for Cecil Turner and Cory TenBrink, is currently an employee of the District Attorney's office in Pueblo County. There is an appearance of impropriety with respect the District Attorney's office prosecuting Mr. Manzanares." This motion was supported by an affidavit from Cory TenBrink, a private attorney in Pueblo, who stated that at the time of the alleged murder, Doug McMillen was employed by both Cecil Turner and Cory TenBrink. The affidavit further averred that the defendant, Duane Manzanares, made calls about this case to the office in which McMillen was employed. TenBrink further asserted in the affidavit that "all information disclosed by Mr. Manzanares [about the case] was imputed within the office of Cory TenBrink."

The District Attorney's Office waived the statutory two-week time period in which to file a response, and a hearing was set for August 19. The District Attorney's Office did not file a responsive pleading prior to the hearing.

At the August 19 hearing, attorney Cory TenBrink testified that the defendant called him at his office to discuss the instant case shortly after June 1. TenBrink testified that he and the defendant discussed the facts of the case, including confidential information about the case. In addition, TenBrink testified, TenBrink and the defendant talked about possible defenses and triable issues. Doug McMillen worked at the law firm as a clerical employee during that time.

After the initial phone conversation, TenBrink and McMillen discussed the information Manzanares had given to them, including the confidential information disclosed by the defendant. McMillan later received up to three additional calls from Manzanares about the case. In addition, there were several in-office meetings with McMillan and/or TenBrink and Manzanares, all of which pertained to the homicide case in question.

TenBrink further testified that, prior to McMillan terminating his employment with TenBrink, TenBrink instructed him not to talk about any of the cases he had been working on in the District Attorney's Office or anywhere else.

The People presented no testimony at the hearing. However, the People submitted an affidavit from Florence Hunt, a supervisor at the District Attorney's Office. In her affidavit, Hunt stated that, as of June 1, 2005, the District Attorney's Office had adopted a screening policy entitled "Policy Screening Current District Attorney Employees From Participating In the Prosecution Of Former Clients."[1]

1. The policy provides:

1. This policy pertains to any employee of the Office of the District Attorney for the Tenth Judicial District Attorney who formerly represented clients in criminal cases now pending prosecution in this office. This member shall be referred to in this policy as "employee." It also applies to all staff of the Office of the District Attorney for the Tenth Judicial District insofar as they are involved in carrying out the provisions of this policy.

2. The employee shall be barred from any participation whatsoever in the prosecution of his/her former client's case(s).

3. The employee shall not access the file of the former client.

4. The employee shall not consult with the prosecutor for the Tenth Judicial District regarding the former client.

5. The employee shall not access any of the photographs, documents, recorded interviews, recorded surveillance activities, tangible evidence, criminal charges, criminal records, motions filed by either party, orders of the court, or any other matter related to any case involving his/her former client.

6. The employee shall not relate any confidential information revealed to the employee during his/her representation of the former client to any member of the Office of the District Attorney for the Tenth Judicial District.

7. The employee shall not be called upon to attend, nor represent the Office of the District Attorney for the Tenth Judicial District, any court dates, no matter how minor in nature, regarding his/her former client.

8. Whenever an attorney, who represents clients with pending criminal cases, or an employee of such an attorney is hired by the Office of the District Attorney for the Tenth Judicial District, a list of the cases the employee has handled shall be posted by email to all members of the office, and posted at the mailbox area where it is openly visible for the inspection of all employees.

9. This policy has been distributed to all employees of the Office of the District Attorney for the Tenth Judicial District, and forms

The affidavit further avers that Doug McMillan was hired on August 1, 2005 by the District Attorney's Office as a temporary employee for a maximum period of two months. He was hired to perform clerical and menial duties. At the time he was hired, McMillan read the policy and signed a copy of it, indicating that he understood the policy. A copy of the policy signed by McMillan was attached to the affidavit. In addition, according to Hunt's affidavit, Hunt had not seen McMillan violate the agreement.

The trial court granted the motion for appointment of special counsel, holding that the evidence presented at least an appearance of impropriety that might deprive the defendant of a fair trial.

## II. Analysis

### A. Section 20–1–107(2) Eliminates Appearance of Impropriety as a Basis for Disqualification of District Attorneys

■ For the reasons discussed in *People v. N.R.*, Nos. 05SA273, 05SA294, 139 P.3d 671, 2006 WL 1737855 which we also announce today, section 20–1–107, C.R.S. (2005), eliminates "appearance of impropriety" as a basis for disqualification of district attorneys. *N.R.*, 139 P.3d at 675. To the extent the trial court relied on this basis, therefore, its disqualification decision was erroneous.

Under section 20–1–107(2), C.R.S. (2005), a trial court may disqualify the district attorney's office 1) when the district attorney requests disqualification, 2) when the district attorney has a personal or financial interest in the prosecution, or 3) when "circumstances exist that would render it unlikely that the defendant would receive a fair trial." The

first two scenarios are not present in the instant case; below we evaluate whether the third scenario is present.

### B. The Case Must be Remanded to Determine Whether "Special Circumstances" Exist That Render it Unlikely That Defendant Would Receive a Fair Trial if Prosecuted by the District Attorney's Office

■ In *People v. Chavez*, 139 P.3d 649, 2006 WL 1737809 which we also announce today, we hold that section 20–1–107(2), C.R.S. (2005), requires disqualification of an assistant district attorney who, as a private attorney, had developed an attorney-client relationship with the defendant in connection with the case for which the defendant was being prosecuted. *Chavez*, No. 05SA311, 139 P.3d at 653. This situation, we hold in *Chavez*, constitutes "circumstances . . . that would render it unlikely that defendant would receive a fair trial" under section 20–1–107(2). *Id.*

The instant case presents similar issues. As described above, Assistant District Attorney Turner has previously represented the defendant. Further, Doug McMillan was employed by an attorney who had consulted with the defendant about defendant's case, and through his employment with this attorney McMillan received confidential information pertaining to the case.

We are unable to determine, on the record before us, whether "special circumstances exist that would render it unlikely that the defendant would receive a fair trial" if prosecuted by the District Attorney's Office. First, the record does not disclose whether Turner's prior representation of the defen-

part of their expected duties as an employee thereof.

10. This policy will be provided to every former client of such an employee of the Office of the District Attorney for the Tenth Judicial District as said clients become known. It shall be the duty of every attorney in this office to provide any former client this policy.

11. This policy is available to any judicial officer and attorney handling cases of the ·employee's former clients.

12. Every member of the Office of the District Attorney for the Tenth Judicial District shall

act independently of the employee in judgment and discretion regarding the prosecution of former clients. If the employee is in a supervisory position within the Office of the District Attorney for the Tenth Judicial District, the subordinates of the employee shall look to the next highest member of the office for review of any issues that office policy otherwise requires regarding cases of his/her former client. If the next highest member of the office is the District Attorney, he may designate either the Chief Deputy District Attorney or another supervisor to perform such review.

dant was "substantially related" to the instant prosecution. *See Chavez*, 139 P.3d at 653.

Second, it is unclear whether McMillan's employment with the District Attorney's Office requires disqualification of the Office. The potential for unfairness that results when an attorney in the district attorney's office has had an attorney-client relationship with the defendant is equally present when an employee of the district attorney's office has gained confidential information about the defendant's cases through his employment with an attorney who consulted with the defendant. In either case, there is a distinct possibility that confidential information could be used to the advantage of the government. *See Osborn v. District Court, 14th Judicial District*, 619 P.2d 41, 45 (Colo.1980). In the instant case, the court found that "Mr. Ten-Brink and Mr. McMillan did in fact discuss the facts of this particular case with [defendant]," and it is undisputed that McMillan was subsequently employed by the District Attorney's Office while defendant's case was pending.

On the other hand, the People argue that the fact that McMillan signed the District Attorney's Office's screening policy, along with the testimony that McMillan was told not to share information about the cases on which he worked during his time with Ten-Brink and the affidavit of the supervisor of the District Attorney's Office stating that she had not observed McMillan violate the policy, demonstrate that no circumstances exist that render it unlikely that the defendant would receive a fair trial.

■ With respect to the screening policy, we conclude that a properly drafted screening policy is indeed relevant to the determination of whether disqualification is necessary to ensure the defendant receives a fair trial. *See People v. Chavez*, 139 P.3d at 654; *Cleary v. Dist. Court*, 704 P.2d 866, 873 (Colo.1985) (concluding that "a government

prosecutor may be presumed to have some knowledge of the cases prosecuted by his co-workers," but that "in circumstances not involving vertical intra-agency relationships ... the presumption may be rebutted by contrary evidence"). However, a review of the screening policy in the instant case does not foreclose the possibility that prosecutors in the District Attorney's Office received knowledge of defendant's case because of McMillan's employment at the Office. It is not clear from the text of the policy that the policy applies to a non-lawyer employee of the District Attorney's Office who received confidential information as a result of his former employer's attorney-client relationship with the defendant.[2]

Therefore, it is necessary to remand to the trial court to make the factual determination of whether confidential information has been and can continue to be screened from those members of the District Attorney's Office who would actually prosecute defendant's case. If so, disqualification is unnecessary. See *Chavez*, 139 P.3d at 654.

■ We note that the testimony of members of the District Attorney's Office alone would not mitigate any "special circumstances" present in this case. We agree with the court of appeals' reasoning in *People v. Stevens* that evidence of sharing of confidential information within the District Attorney's Office, "being under the control of the prosecution, would be well-nigh impossible for a defendant to bring forth." 642 P.2d 39, 41 (Colo.App.1981). Therefore, while a properly drafted screening policy provides evidence pertaining to whether confidential information was shared, the assertions of members of the District Attorney's Office, without more, cannot justify the conclusion that no information was shared.

### III. Conclusion

For the foregoing reasons, we reverse the trial court's disqualification order and re-

---

2. Paragraph 1 of the Policy provides that
   [t]his policy pertains to any employee of the Office of the District Attorney for the Tenth Judicial District Attorney who formerly represented clients in criminal cases now pending prosecution in this office. This member shall be referred to in this policy as "employee." It also applies to all staff of the Office of the District Attorney for the Tenth Judicial District insofar as they are involved in carrying out the provisions of this policy.

mand with instructions to determine whether "special circumstances" require disqualification under section 20–1–107(2).

Justice BENDER specially concurs, Chief Justice MULLARKEY and Justice MARTINEZ join in the special concurrence.

Justice BENDER, specially concurring.

I agree with the majority's decision to remand for a determination of whether the disqualified attorneys can be effectively screened pursuant to Colorado Rules of Professional Conduct 1.11. However, I stand on my construction of the disqualification statute, section 20–1–107, C.R.S. (2005), as expressed in my dissent in *People v. N.R.*, 05SA273.

I am authorized to state that Chief Justice MULLARKEY and Justice MARTINEZ join in the special concurrence.