The PEOPLE of the State of Colorado, Plaintiff–Appellant

v.

**Loren Aldopho CHAVEZ, Defendant–Appellee.**

**No. 05SA311.**

Supreme Court of Colorado, En Banc.

June 26, 2006.

**650**

Bill Thiebaut, District Attorney, Tenth Judicial District, Karl S. Tameler, Deputy District Attorney, Pueblo, Colorado, Attorney for Plaintiff–Appellant.

The Law Offices of J.E. Losavio, J.E. Losavio, Wesley Hassler, Suzanne E. McKinney–Swanstrom, Pueblo, Colorado, Attorneys for Defendant–Appellee.

Justice RICE delivered the Opinion of the Court.

## I.  Facts and Procedural History

Defendant Loren Aldopho Chavez has been charged in six different cases in Pueblo County District Court.[1]  Pueblo Attorney Cory TenBrink entered his appearance in five of the cases.  Attorney Steven Newell later entered a substitution of counsel in four of the five cases.  Thereafter, on July 21, 2005, the defendant substituted another new counsel, J.E. Losavio, with respect to all six of his cases.

Defendant then filed a motion entitled Defendant's Motion for the Disqualification of the Office of the District Attorney for the

---

1.  Case number 04CR2137, filed January 3, 2005, charges the defendant with one count of Sexual Assault, a class-four felony.  Case number 04CR2138, filed January 3, 2005, charges the defendant with two counts of Sexual Exploitation of a Child, class-three felonies, and two counts of Contributing to the Delinquency of a Minor, class-four felonies.  Case number 04CR2139, filed January 3, 2005, charges the defendant with one count of Sexual Assault, a class-three felony, and two counts of Second Degree Kidnapping, one a class-two felony, the other a class-four felony.  Case number 04CR2162, filed January 20, 2005, charges the defendant with one count of Possession of a Controlled Substance, Schedule III, a class-four felony.  Case number 05CR177, filed February 17, 2005, charges the defendant with one count of Sexual Assault, a class-four felony.  Case number 05CR809, filed May 13, 2005, charges the defendant with Sexual Assault, a class-three felony.

Tenth Judicial District in all six cases. Each motion alleged that Cecil Turner's employment as An assistant district attorney for the Pueblo District Attorney's office,[2] after having engaged in confidential communications with the defendant about the pending cases, constituted an appearance of impropriety such that the Office of the District Attorney for the Tenth Judicial District (hereinafter District Attorney's Office) should be disqualified.

The motions were each supported by the same affidavit from attorney Cory TenBrink, who stated that Cecil Turner told him that a woman Turner knew as Amber Anaya came to Turner's office more than once to discuss retaining Turner to represent the defendant in the six pending cases. TenBrink averred that Turner had a discussion with the defendant about the cases. Turner told TenBrink about these contacts because Turner was under the impression that defendant's cases "should have ended up in his office."

A hearing was held on all six motions to disqualify on October 4, 2005. At the hearing, the defense called TenBrink, who testified that he had been contacted and retained by the defendant in January 2005 for the purpose of representing him in the cases then pending. Later, TenBrink testified, he had a conversation with attorney Cecil Turner, who at that time was a colleague and a friend. According to TenBrink, in that conversation Turner "indicated ... that he thought that the defendant was going to hire his office." TenBrink then spoke to the defendant and learned that the defendant had spoken with Turner's office, as well as that of another Pueblo attorney. TenBrink testified that the defendant told him that he had spoken with Turner by phone about the case.

The defendant also testified at the hearing. He stated that Turner called him on his cellular telephone, and that in the course of the eight-to-ten-minute conversation that ensued, he disclosed to Turner information about his pending cases. He further testified that he believed that the information he discussed would be kept confidential.

The People called Douglas McMillan as a witness. McMillan testified that he worked for Turner as a clerical assistant during January, 2005. McMillan testified that no formal intake sheet was completed for the defendant, although he does remember that a female called about retaining Turner's services for the defendant. He did not take any confidential or case-related information from the female. Turner later asked McMillan to make a follow-up call to the female, who told him that the defendant had already hired TenBrink.

Finally, the People introduced into evidence a copy of the Pueblo District Attorney's "Policy Screening Current District Attorney Employees from Participating in the Prosecution of Former Clients." This policy prohibits any employee who formerly represented private criminal defendants from speaking about their representation or about their duties in that capacity to any member of the District Attorney's Office or sharing any information or becoming involved in the cases that would now be pending against former clients.[3]

---

2. Turner was hired by the Pueblo County District Attorney's Office on or about June 1, 2005.

3. The policy provides:
   1. This policy pertains to any employee of the Office of the District Attorney for the Tenth Judicial District Attorney who formerly represented clients in criminal cases now pending prosecution in this office. This member shall be referred to in this policy as "employee." It also applies to all staff of the Office of the District Attorney for the Tenth Judicial District insofar as they are involved in carrying out the provisions of this policy.
   2. The employee shall be barred from any participation whatsoever in the prosecution of his/her former client's case(s).

3. The employee shall not access the file of the former client.
4. The employee shall not consult with the prosecutor for the Tenth Judicial District regarding the former client.
5. The employee shall not access any of the photographs, documents, recorded interviews, recorded surveillance activities, tangible evidence, criminal charges, criminal records, motions filed by either party, orders of the court, or any other matter related to any case involving his/her former client.
6. The employee shall not relate any confidential information revealed to the employee during his/her representation of the former client to any member of the Office of the District Attorney for the Tenth Judicial District.

The trial court granted the defendant's motion for disqualification of the District Attorney's Office on October 5, 2005. The trial court found that the defendant had an eight-to-ten-minute conversation with Turner "where Mr. Chavez disclosed to Mr. Turner information about the pending cases. Mr. Chavez believed the information he gave Mr. Turner would be kept confidential." The trial court also found that McMillan confirmed the fact that someone had contacted Turner's office regarding representation of defendant. Moreover, the trial court found that Turner had a discussion with defendant's former counsel, TenBrink, and that TenBrink described Turner as "mildly upset" about TenBrink's representation of defendant because "Mr. Turner was under the impression that Mr. Chavez's cases should have ended up in his office." The trial court also found that Turner himself had believed the relationship existed at one point in time, and that the existence of an attorney-client relationship is "not dependant on payment of fees or upon the execution of a formal contract."

The court did not find that Turner had a personal or financial interest in the prosecution; however, based upon the above findings of fact, the court concluded that there was an appearance of impropriety in the District Attorney's continuing to prosecute the defendant. The court additionally found that the District Attorney's Office's screening policy was not sufficient to overcome the appearance of impropriety under the circumstances of this case.[4] Therefore, the court granted Defendant's motion for disqualification of the District Attorney's Office in his cases.

The People filed an interlocutory appeal of the trial court's ruling in this court. We conclude that the trial court erred in basing disqualification on an appearance of impropriety. However, our review of the record leads us to conclude that Turner's prior attorney-client relationship with Chavez requires that he personally be disqualified. We remand for a determination whether "special circumstances that would render it unlikely that the defendant would receive a fair trial" under section 20–1–107(2), C.R.S. (2005), exist such that the statute requires the entire District Attorney's Office to be disqualified.

## II. Analysis

### A. The Trial Court Erred in Basing Disqualification on an "Appearance of Impropriety"

In *People v. N.R.*, which we also announce today, we hold that section 20–1–107, C.R.S.

---

7. The employee shall not be called upon to attend, nor represent the Office of the District Attorney for the Tenth Judicial District, any court dates, no matter how minor in nature, regarding his/her former client.

8. Whenever an attorney, who represents clients with pending criminal cases, or an employee of such an attorney is hired by the Office of the District Attorney for the Tenth Judicial District, a list of the cases the employee has handled shall be posted by email to all members of the office, and posted at the mailbox area where it is openly visible for the inspection of all employees.

9. This policy has been distributed to all employees of the Office of the District Attorney for the Tenth Judicial District, and forms part of their expected duties as an employee thereof.

10. This policy will be provided to every former client of such an employee of the Office of the District Attorney for the Tenth Judicial District as said clients become known. It shall be the duty of every attorney in this office to provide any former client this policy.

11. This policy is available to any judicial officer and attorney handling cases of the employee's former clients.

12. Every member of the Office of the District Attorney for the Tenth Judicial District shall act independently of the employee in judgment and discretion regarding the prosecution of former clients. If the employee is in a supervisory position within the Office of the District Attorney for the Tenth Judicial District, the subordinates of the employee shall look to the next highest member of the office for review of any issues that office policy otherwise requires regarding cases of his/her former client. If the next highest member of the office is the District Attorney, he may designate either the Chief Deputy District Attorney or another supervisor to perform such review.

4. The court thereafter denied a motion to reopen the hearing to allow the defendant to be cross-examined about the nature of his conversation with Turner, and to allow Turner to testify about his conversation with the defendant, ruling that "the defendant has not waived his right against self-incrimination guaranteed to him by the United States Constitution, as well as the Colorado Constitution, nor has he waived his attorney/client privilege with regard to Mr. Turner."

(2005), eliminates "appearance of impropriety" as a basis for disqualification of district attorneys. *N.R.*, Nos. 05SA273, 05SA294, slip op. at 10–11. The trial court in the instant case, therefore, erred in disqualifying the District Attorney's Office because of the appearance of impropriety it found in the case.

## B. Section 20–1–107 Requires Disqualification of Assistant District Attorney Turner

■ Section 20–1–107(2) authorizes disqualification of a district attorney's office "at the request of the district attorney or upon a showing that the district attorney has a personal or financial interest" or if the court finds that "special circumstances exist that would render it unlikely that the defendant would receive a fair trial." The district attorney has not requested disqualification in this case, and the trial court expressly found that there is no personal or financial interest on the part of the District Attorney's Office that warrants disqualification. The only issue we must resolve, then, is whether Assistant District Attorney Turner's contacts with the defendant when Turner was in private practice amount to "circumstances that would render it unlikely that the defendant would receive a fair trial" if prosecuted by the District Attorney's Office.

We have not, before today, construed the provision in section 20–1–107(2) that authorizes disqualification when the trial court finds that "special circumstances exist that would render it unlikely that the defendant would receive a fair trial." However, as we note in *N.R.*, we have considered what type of facts would support the conclusion that disqualification is necessary to ensure that the defendant receives a fair trial. *See People v. C.V.*, 64 P.3d 272, 275–76 (Colo.2003); *People v. Dist. Court in and For Second Judicial District*, 189 Colo. 159, 162, 538 P.2d 887, 888–89

(1975); *Wheeler v. District Court*, 180 Colo. 275, 278–79, 504 P.2d 1094, 1096 (1973).

Indeed, in *Farina v. Dist. Court*, which was consolidated with *Osborn v. Dist. Court*, 619 P.2d 41 (Colo.1980), we considered whether the district attorney's prior representation of a criminal defendant could reasonably form the basis for the conclusion the defendant would " 'probably not receive a fair trial' " if prosecuted by the district attorney's office. *Id.* at 48 (quoting *Wheeler*, 180 Colo. at 278–79, 504 P.2d at 1096).[5] The defendant in *Farina* moved to disqualify the district attorney's office because the district attorney had represented the defendant in an unrelated case thirteen years prior to the prosecution at issue. We concluded that disqualification is proper when "the present prosecution is 'substantially related' to the earlier case." *See Osborn*, 619 P.2d at 48 (framing the disqualification issue in these terms). Given the factual distinctions between the two prosecutions, as well as the fact that thirteen years had passed between them, we concluded that the defendant had not met his burden of proving that he would "probably not receive a fair trial" if prosecuted by the district attorney. *Id.* at 48.

■ In light of *Farina*, we hold that where the prosecuting attorney had an attorney-client relationship with the defendant in a case that was substantially related to the case in which the defendant is being prosecuted, "circumstances exist that would render it unlikely that the defendant would receive a fair trial." § 20–1–107(2), C.R.S. (2005); see *Colorado Rules of Prof'l Conduct* R. 1.11(c); *Osborn*, 619 P.2d at 45 (upholding trial court's disqualification of law firm of attorney who participated in the prosecution of defendant before joining the law firm, in part because of the relationship the attorney had formed with the victim as a prosecutor, and noting that "[t]he advantage that such a relationship could give a defense lawyer on cross-examination of the victim is obvious").[6]

5. It is true that *Farina* was decided under the appearance-of-impropriety standard. However, *Farina's* precedential value for the instant case arises from its conclusion that it is incumbent upon a defendant seeking removal of a district attorney " 'to establish facts from which the trial court may reasonably conclude that the accused will probably not receive a fair trial to which he is entitled.' " *Id.* at 48 (internal citation omitted).

6. We note that this conclusion is consistent with the practice in several other jurisdictions. *See, e.g., State v. Stenger*, 111 Wash.2d 516, 520, 760

Applying this rule to the instant case, we conclude that disqualification of Assistant District Attorney Turner is required under the "special circumstances" provision of section 20–1–107(2). First, it is clear that Chavez had an attorney-client relationship with Turner. Under longstanding Colorado law, the attorney-client relationship arises when a defendant consults an attorney about his case. *Losavio v. Dist. Court*, 188 Colo. 127, 133, 533 P.2d 32, 35 (1975) ("The [attorney-client] privilege is established by the act of a client seeking professional advice from a lawyer."); *Denver Tramway Co. v. Owens*, 20 Colo. 107, 128, 36 P. 848, 855 (1894) ("If a person in respect to his business affairs, or troubles of any kind, consults with an attorney in his professional capacity, with the view to obtaining professional advice or assistance, and the attorney voluntarily permits or acquiesces in such consultation, then the professional employment must be regarded as established....").

Second, the attorney-client relationship was "substantially related" to the instant prosecution. The trial court expressly found that the defendant's conversation with Turner was "about" defendant's cases. This constitutes "circumstances ... that would render it unlikely that defendant would receive a fair trial." § 20–1–107(2), C.R.S. (2005).

## C. The Trial Court Shall Determine on Remand Whether the Entire Tenth Judicial District Must be Disqualified

■ With regard to the District Attorney's Office as a whole, the People urge the court to consider the District Attorney's Screening Policy, *see supra* note 5, in assessing the likelihood of Chavez's receiving a fair trial. We agree that a properly drafted screening policy would be relevant to the court's discretionary decision as to whether the "special circumstances" require disqualification of the entire office. *See Cleary v. Dist. Court*, 704 P.2d 866, 873 (Colo.1985) (concluding that "a government prosecutor may be presumed to have some knowledge of the cases prosecuted by his co-workers," but that "in circumstances not involving vertical intra-agency relationships ... the presumption may be rebutted by contrary evidence").[7] In other words, the question of whether a district attorney's office has a screening policy that adequately obviates any special circumstances that might lead to an unfair trial is a question of fact to be determined by the judge. If the screening policy is adequate, then no disqualification is necessary, because there are no special circumstances which would mandate disqualification. On the other hand, if no screening policy exists or the screening policy is for

P.2d 357, 359–60 (1988) (concluding that "a prosecuting attorney is disqualified from acting in a criminal case if the prosecuting attorney has previously personally represented or been consulted professionally by an accused with respect to the offense charged or in relationship to matters so closely interwoven therewith as to be in effect a part thereof"); *State v. Tippecanoe County Court*, 432 N.E.2d 1377, 1378 (Ind.1982) ("The precepts of professional ethics forbid the participation of a lawyer in the prosecution of a criminal case if by reason of his professional relation with the accused, he has acquired a knowledge of facts upon which the prosecution is predicated or which are closely interwoven therewith."); *State v. Jones*, 180 Conn. 443, 449, 429 A.2d 936, 939 (1981) (overruled on other grounds) ("An attorney should be disqualified ... if he has accepted employment adverse to the interests of a former client on a matter substantially related to the prior litigation.").

7.  In fact, allowing for consideration of a screening policy would make Colorado law consistent with the practice of several other jurisdictions. *See, e.g., State ex rel. Tyler v. MacQueen*, 191

W.Va. 597, 601, 447 S.E.2d 289, 293 (1994) (holding that "the fact that an assistant prosecuting attorney previously represented a criminal defendant while in private practice does not preclude the prosecutor's office as a whole from participation in further prosecution of criminal charges against the defendant"); *State v. Tippecanoe County Court*, 432 N.E.2d 1377, 1379 (Ind. 1982) ("Where a lawyer who has represented a criminal defendant on prior occasions is one of the deputy prosecutors, disqualification of the entire office is not necessarily appropriate. Individual rather than vicarious disqualification may be the appropriate action, depending upon the specific facts involved.") (quoted with approval in *Collier v. Legakes*, 98 Nev. 307, 310, 646 P.2d 1219, 1220–21 (1982)); *State ex rel. Romley v. Superior Court*, 184 Ariz. 223, 228, 908 P.2d 37, 42 (App.1995) (placing a burden on the prosecution to demonstrate why one lawyer's prior participation in defendant's case should not require vicarious disqualification of the entire district attorney's office).

some reason inadequate, the court must determine whether confidential information from a prior representation nevertheless has been and can continue to be adequately screened from others actually prosecuting the case, in view of the nature of the particular office and circumstances of the prior representation.

The trial court in the instant case determined that the policy, which applies to "any employee of the Office of the District Attorney ... who formerly represented clients in criminal cases now pending prosecution in this office," *see supra note* 3, does not address the circumstances surrounding Chavez's disqualification motion. Specifically, the trial court found that the policy "[does] not address the circumstance raised by the defendant in his motion to disqualify as Mr. Turner was never formally retained by the defendant." We agree that the policy as written is ambiguous as to which employees of the District Attorney's Office are governed by its terms. Therefore, the district court must determine whether the particular circumstances render it unlikely that the defendant would receive a fair trial if prosecuted by this district attorney's office.

### III. Conclusion

For the foregoing reasons, we reverse the order of the trial court and remand with instructions to reconsider its order disqualifying the entire District Attorney's Office.

Justice BENDER specially concurs, Chief Justice MULARKEY and Justice MARTINEZ join in the special concurrence.

Justice BENDER, specially concurring.

I agree with the majority's decision to remand for a determination of whether the disqualified attorneys can be effectively screened pursuant to Colorado Rules of Professional Conduct 1.11. However, I stand on my construction of the disqualification statute, section 20–1–107, C.R.S. (2005), as expressed in my dissent in *People v. N.R.*, 05SA273.

I am authorized to state that Chief Justice MULLARKEY and Justice MARTINEZ join in the special concurrence.