523 P.3d 427 The PEOPLE of the State of Colorado, Plaintiff- Appellant,
v. Jorge SOLIS, Defendant- Appellee.
Supreme Court Case No. 22SA200 Supreme Court of Colorado.
November 14, 2022
Attorneys for Plaintiff-Appellant: Seth D. Ryan, District Attorney, Seventh Judicial District, Jessica J. Waggoner, Chief Deputy District Attorney, Montrose, Colorado
Attorneys for Defendant-Appellee: Megan A. Ring, Public Defender, Kori Zapletal, Deputy Public Defender, Jon W. Grevillius, Deputy Public Defender, Denver, Colorado
En banc
JUSTICE BERKENKOTTER delivered the Opinion of the Court, in which CHIEF JUSTICE BOATRIGHT, JUSTICE MÁRQUEZ, JUSTICE HOOD, JUSTICE HART, and JUSTICE SAMOUR joined.
JUSTICE BERKENKOTTER delivered the Opinion of the Court.
¶1 In this interlocutory appeal, the People challenge the trial court's order granting Jorge Solis's motion to disqualify the entire District Attorney's Office for the Seventh Judicial District ("DA's Office") and to appoint a special prosecutor. Solis filed his motion after Darren Struble, who formerly represented Solis as a public defender in the underlying case, began working for the DA's Office that is prosecuting the case against Solis. There is no question, of course, that Struble is disqualified from working on Solis's case.1 The issue presented here is whether, as Solis argued before the trial court, Struble's former representation of Solis constituted "special circumstances" under section 20-1-107(2), C.R.S. (2022), requiring not just Struble's disqualification, but also disqualification of the entire DA's Office.
¶2 Following a half-day hearing, the trial court found that the DA's Office had a screening policy in place and that it had taken additional precautions to wall Struble off from Solis's prosecution. The court thus concluded Solis had failed to establish that special circumstances existed such that "it [was] unlikely that [he] would receive a fair trial." Id. The trial court, accordingly, denied the motion to disqualify the entire DA's Office.
¶3 Eight days later, Solis filed a motion for reconsideration after learning that Struble appeared for the DA's Office during his second day on the job in two unrelated cases involving a different former client, Mr. Flores-Molina, in violation of the screening policy. The trial court concluded, upon reconsideration, that there was a "potential, if not likelihood," that Struble would further violate the screening policy, so it granted Solis's motion, disqualified the entire DA's Office, and ordered the appointment of a special prosecutor.
¶4 We conclude that the trial court abused its discretion in granting Solis's motion. The trial court's determination that Struble could potentially deviate from the screening policy in the future was based on his appearance in Mr. Flores-Molina's case; it was not a determination that Struble would violate the screening policy in this case or that confidential information from Struble's prior representation had not been or could not continue to be adequately screened from the attorneys prosecuting Solis's case. Because there is no evidence in the record that Solis is unlikely to receive a fair trial, we vacate the trial court's order disqualifying the entire DA's Office. See People v. Kent, 2020 CO 85, ¶ 19, 476 P.3d 762, 766.
I. Facts and Procedural History
¶5 Solis is charged with murder in the first degree, § 18-3-102(1)(a), C.R.S. (2022), criminal attempt to commit first degree arson, § 18-4-102(1), C.R.S. (2022); § 18-2-101, C.R.S. (2022), and first degree criminal trespass, § 18-4-502, C.R.S. (2022). The DA's Office is prosecuting this case out of its Gunnison Office.
¶6 The Montrose Regional Office of the State Public Defender ("the PD's Office") has represented Solis throughout this case. Struble, who began his employment as an attorney with the PD's Office after graduating from law school in 2020, was among the public defenders representing Solis.
¶7 In January 2022, the elected District Attorney for the Seventh Judicial District, Seth Ryan, contacted Struble regarding employment opportunities with the DA's Office. Struble indicated that while he was interested in possible alternative employment, he sought a position that was at least partially based in Gunnison, and at that time, there were no openings in the DA's Gunnison Office. On March 14, 2022, after learning about an opening in the Gunnison Office, Ryan contacted Struble again to discuss possible employment. Struble accepted a position in the DA's Gunnison Office on March 25, 2022, and resigned from his position with the PD's Office that day, after he had a conversation with the regional head of the PD's Office. Struble did not take any files, computers, or notes regarding any of his cases when he left.
¶8 Struble was slated to begin work at the DA's Office on or about April 18, 2022. On April 13, 2022, Solis filed a motion for appointment of a special prosecutor, asking the court to disqualify Struble and the entire DA's Office from prosecuting his case. In support of his motion, Solis argued that Struble obtained a great deal of confidential information during the time he represented Solis, and that his new role as a deputy district attorney created a conflict for him and the entire DA's Office.
¶9 The DA's Office responded the same day, conceding that Struble, who had not yet started work, would indeed be disqualified from Solis's case. It argued, however, that special circumstances did not exist that required disqualification of the entire DA's Office because it had taken a number of steps, in anticipation of Struble's pending employment, to insulate Struble from the prosecution of any of his former clients. These included its April 7, 2022 implementation of a new policy establishing a protocol for screening prosecutors from participating in the prosecution of former clients ("the screening policy").
¶10 The screening policy provided that employees were "barred from any participation whatsoever in cases which involve the prosecution of [their] former clients, or anyone with whom the employee[s] developed an attorney-client relationship, in the same or a substantially related matter." The screening policy further prohibited employees from, among other things, accessing files related to former clients; consulting with the prosecutor or staff involved with the prosecution of former clients; "access[ing] any of the photographs, documents, recorded interviews, recorded surveillance activities, tangible evidence, criminal charges, criminal records, motions filed by either party, orders of the court, or any other matter related to any case" involving former clients; and sharing confidential information revealed during their representation of former clients. The screening policy also barred employees from appearing on behalf of the DA's Office in any court proceedings involving former clients. Every employee (including Struble once he started work there) was required to sign the screening policy.
¶11 The DA's Office further noted that when Ryan hired Struble, it obtained a list from "judicial" identifying those cases in which Struble was listed as counsel. Ryan shared the list and the screening policy with the PD's Office and asked it to confirm the list's accuracy.
¶12 Finally, the DA's Office argued that, because it knew Struble had represented Solis, the prosecutors took extra precautions—beyond those required by the screening policy — with respect to Solis's case. For instance, the DA's Office, which is paperless, has blocked Struble from using the e-filing system in this case. It has also done so with respect to all 120 clients on the list Ryan sent to the PD's Office. Additionally, all work on Solis's case is confined to the DA's conference room, which had screens erected to cover the room's windows and blockers put on the door to ensure no one can look into the room. No files are kept outside the conference room. Exhibits and other evidence in the case are kept there as well. And, as an additional precaution, all meetings regarding the case take place in this conference room. The DA's Office further represented that all major witnesses were advised regarding the conflict and instructed to restrict discussions regarding the case to that room.
¶13 The trial court then set the motion for an evidentiary hearing on May 10, 2022.
¶14 On May 3, 2022, an investigator for the PD's Office travelled to the DA's Gunnison Office to serve Struble and another prosecutor with subpoenas to appear at the May 10, 2022 hearing. Struble accepted the subpoena from the investigator, whom Struble knew from working at the PD's Office. The other attorney would not accept service, Struble told the investigator, adding that the attorney was researching whether he would be prohibited from prosecuting Solis's case if he accepted the subpoena.
¶15 The trial court held the hearing on the motion to appoint a special prosecutor on May 10, 2022, and denied the motion six days later in a thoughtful, detailed order. The court concluded that Solis had not met his burden of proving that it was unlikely he would receive a fair trial if his case were prosecuted by the DA's Office, "assuming compliance with the policy." Further, the court noted that no evidence had been presented indicating that Struble had disclosed — or would ever disclose — any confidential information to the DA's Office. In this regard, the trial court credited Struble's testimony that he had not and would not disclose any information from his representation of Solis to anyone, including anyone associated with the prosecution of the case, due to the obvious ethical issues. The trial court found that Struble's testimony was not only credible, but also consistent with his explanation about why he went to law school (a family member was wrongfully convicted of murder); why he worked for the Public Defender; and, nevertheless, why he ultimately sought employment in Gunnison County, where he and his family reside.
¶16 Although the court expressed concern regarding Struble's actions on May 3, 2022, with the PD's investigator, it concluded that those actions did not involve the disclosure of Solis's confidences. The trial court further noted that the PD's Office presumably knew that attempting to informally serve Struble at the DA's Office increased the likelihood that Struble would have to communicate with someone in the DA's Office about the subpoena, and thus about Solis's case. Finally, the trial court indicated that while it presumed strict compliance with the screening policy, it also presumed that if the list of Struble's 120 former clients was incomplete, the PD's Office would promptly supplement the list by identifying any missing clients. The trial court then cautioned that it would not tolerate any further lapses.
¶17 Solis filed a motion to reconsider on May 24, 2022, after learning that Struble appeared on behalf of the DA's Office, on his second day on the job, in two unrelated misdemeanor cases involving a former client, Mr. Flores-Molina. The DA's Office responded, arguing that the PD's Office failed to explain how Mr. Flores-Molina's cases impacted Solis's case in any substantive manner. This disconnect was particularly pronounced, the DA's Office asserted, as the PD's Office never informed the People that Mr. Flores-Molina — who was not identified on the list of Struble's 120 former clients — had previously been represented by Struble. The DA's Office emphasized the fleeting nature of Struble's prior representation of Mr. Flores-Molina, which consisted primarily of argument on bond in Mr. Flores-Molina's two misdemeanor cases because once Mr. Flores-Molina bonded out, he no longer qualified to be represented by the PD's Office. According to the DA's Office, the violation of the screening policy demonstrated not that Struble would divulge Solis's confidences, but rather that the violation occurred because the PD's Office declined to respond to multiple requests for Struble's prior client list, thus forcing Struble to rely on his memory of a former client with whom he had very limited interactions.
¶18 In its ruling, the trial court again found that Struble had not and would not discuss Solis's case with his new colleagues. Nonetheless, the court reasoned that its original order denying the motion for a special prosecutor "was predicated on the Policy" and the "deviation from the Policy ... suggests the potential, if not likelihood, of further such instances and delays in the resolution of this case." The court thus granted the motion to reconsider, disqualified the entire DA's Office, and ordered the appointment of a special prosecutor to move forward with Solis's case.2 ¶19 The People then filed an interlocutory appeal of the trial court's ruling pursuant to section 16-12-102(2), C.R.S. (2022).
II. Analysis
A. Jurisdiction ¶20 We first address our jurisdiction to resolve the issue presented.
¶21 We conclude that this interlocutory appeal from the district court's order granting Solis's motion to disqualify the DA's Office is properly within our jurisdiction. See, e.g., Kent, ¶ 16, 476 P.3d at 765-66 ; People v. Kendrick, 2017 CO 82, ¶ 33, 396 P.3d 1124, 1130. Under section 16-12-102(2), "The prosecution may ... file an interlocutory appeal in the supreme court from ... a ruling on a motion to disqualify a district attorney pursuant to section 20-1-107, C.R.S. [(2022)]."
B. Standard of Review ¶22 We review the trial court's order disqualifying a district attorney's office for an abuse of discretion. Kent , ¶ 28, 476 P.3d at 768. "A district court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair." Id. (quoting People v. Ehrnstein, 2018 CO 40, ¶ 13, 417 P.3d 813, 816 ). "If a court grants a motion to disqualify a prosecuting office based on a misapplication of the law, it abuses its discretion." Id.
C. Legal Framework
¶23 The "General Assembly has declared that it is ‘necessary to protect the independence of persons duly elected to the office of district attorney.’ " Id. at ¶ 18, 476 P.3d at 766 (quoting § 20-1-107(1) ). To that end, section 20-1-107(2) provides that a court may only disqualify an elected district attorney from a case under three limited circumstances: (1) when requested by a district attorney; (2) when the district attorney has a personal or financial interest in the case; or (3) when special circumstances exist that would render it unlikely that the defendant would receive a fair trial.3 ¶24 These are the exclusive bases for disqualifying a district attorney.4 People v. Loper, 241 P.3d 543, 546 (Colo. 2010). We focus our attention here on the third of these categories, that is, on special circumstances that would render it unlikely a defendant would receive a fair trial. ¶25 The key to this inquiry, as the statute explicitly provides, is whether it is "unlikely that the defendant would receive a fair trial." § 20-1-107(2). A defendant bears the burden of "establish[ing] facts sufficient to support a conclusion that he will not receive a fair trial." People v. Perez, 201 P.3d 1220, 1230 (Colo. 2009) (emphasis omitted) (citing People v. Lincoln, 161 P.3d 1274, 1279 (Colo. 2007) ). To meet this burden, the defendant must point to "actual facts and evidence in the record supporting the contention." Loper, 241 P.3d at 546. " ‘[M]ere hypothetical information’ does not suffice." Kent, ¶ 19, 476 P.3d at 766 (alteration in original) (quoting Loper, 241 P.3d at 546 ). ¶26 We do not consider this question on a blank slate. We have, on a number of occasions, considered whether special circumstances exist to justify the disqualification of an entire district attorney's office. These cases make it clear that the special circumstances "must be extreme to justify disqualifying the district attorney." Id. at ¶ 20, 476 P.3d at 766 (quoting Loper, 241 P.3d at 546 ). This is why, in this court's review of trial court disqualification orders under this standard, we have identified only one set of circumstances that was sufficiently extreme to potentially justify disqualification of an entire district attorney's office. Kendrick, ¶¶ 43-44, 396 P.3d at 1131 (referring to People v. Chavez, 139 P.3d 649 (Colo. 2006) ).
¶27 We described those circumstances in People v. Chavez , a case that is particularly instructive with respect to our inquiry here. The defendant in Chavez filed a motion to disqualify an assistant district attorney, Turner, as well as the entire district attorney's office, arguing that Turner had previously represented Chavez in a substantially related matter and that Turner was privy to confidential communications regarding Chavez's pending case. Chavez, 139 P.3d at 650-51. The trial court granted the motion, disqualifying Turner and the entire district attorney's office. Id. at 652.
¶28 After the district attorney's office filed an interlocutory appeal, we affirmed the trial court's order as to Turner, concluding that his prior attorney-client relationship with Chavez and access to confidential communications required that he be personally disqualified. Id. at 654. Then, we turned to consider whether the conflict of an individual prosecutor should be imputed to the entire district attorney's office. Id. at 654-55. Rather than automatically imputing the conflict, we determined that a properly drafted screening policy would be relevant to the trial court's discretionary decision as to whether "special circumstances" require disqualification of the entire office. Id. We concluded,
If the screening policy is adequate, then no disqualification is necessary, because there are no special circumstances which would mandate disqualification. On the other hand, if no screening policy exists or the screening policy is for some reason inadequate, the court must determine whether confidential information from a prior representation nevertheless has been and can continue to be adequately screened from others actually prosecuting the case, in view of the nature of the particular office and circumstances of the prior representation. Id. Employing that analysis, we remanded to the district court to determine whether Chavez could receive a fair trial in light of an ambiguity in the district attorney's screening policy. Id.
¶29 We considered a disqualification question similar to the one presented here in People v. Perez, 201 P.3d at 1223. There, the defendant sought to disqualify the entire district attorney's office because an attorney from the Attorney General's Office who was assisting the district attorney's office with the prosecution had previously represented the defendant in an unrelated case. Id. at 1225. The attorney testified that he neither recalled the defendant nor obtained any confidential information while representing him. Id. at 1225–26. The trial court concluded that special circumstances justified the exclusion of the entire district attorney's office. Id. at 1228, 1230. We disagreed, explaining: "[T]he question is ‘whether confidential information from a prior representation ... has been and can continue to be adequately screened from others actually prosecuting the case.’ " Id. at 1229 (quoting Chavez, 139 P.3d at 655 ).
¶30 This inquiry, we observed, "strikes an appropriate balance between ensuring fairness to the defendant while also recognizing the public duty of district attorney's offices to prosecute cases arising in their districts." Id. at 1229–30 (explaining that, unlike law firms, district attorney's offices do not have a choice as to whether to accept a case). Applying that test, we concluded that the defendant did not meet his burden because he "presented no facts to show that [the prosecutor] either possessed confidential information or passed it to members of the DA's Office." Id. at 1230.
¶31 With these legal principles in mind, we turn to the case at hand.
D. Application ¶32 As noted, the question before us in evaluating whether the entire DA's Office must be disqualified pursuant to section 20-1-107(2) is whether special circumstances exist that render it unlikely that Solis will receive a fair trial. In his motion, Solis argued that it was unlikely he would receive a fair trial because Struble obtained a great deal of confidential information during the time he represented Solis. To determine if disqualification is necessary under these circumstances, we look to whether confidential information from Struble's prior representation of Solis "nevertheless has been and can continue to be adequately screened." Chavez, 139 P.3d at 655.
¶33 We conclude that the trial court abused its discretion in determining that the answer to this question was "no" and in disqualifying the entire DA's Office and directing the appointment of a special prosecutor. To be sure, the trial court's concern about a potential or even likely future deviation from the screening policy is understandable, particularly as the PD's Office has declined to indicate if the names of any of Struble's former clients are missing from the list the DA's Office sent it back in April. And clearly Mr. Flores-Molina's situation illustrates that the list was —at the very least — missing his name. But this concern is based on what occurred in Mr. Flores-Molina's cases, or what might happen if there are other former clients of Struble's who are not on the list. It is not pertinent to this case as the lawyers are all well aware of Struble's conflict as it relates to Solis.
¶34 The trial court's apprehension about future violations based on Struble appearing for the prosecution in Mr. Flores-Molina's cases is also not generalizable to this case. The PD's Office's motion is predicated on the concern that Struble will share confidential information with his new colleagues, not that Struble will knowingly or unknowingly appear in court on behalf of the DA's Office in Solis's case. Put another way, Struble's violation of the screening policy with regard to a different former client does not bear on whether Struble "has been and can continue to be adequately screened" here. Id.
¶35 Additionally, there are extra safeguards in place in Solis's case that are not in place with respect to Struble's other former clients. Struble's unwitting violation of the screening policy in Mr. Flores-Molina's cases does not indicate that Struble would breach those additional safeguards, share confidential information with his new colleagues or others, and thus jeopardize his license to practice law.
¶36 Here, the trial court relied on hypothetical information in deciding to disqualify the entire district attorney's office. See Kent, ¶ 19, 476 P.3d at 766. But to meet his burden, Solis "must point to ‘actual facts and evidence in the record supporting the contention.’ " Id. (quoting Loper, 241 P.3d at 546 ). That is to say, a hypothetical violation is not enough. Id. And, here, that is all there is. There is no evidence in the record that indicates Struble has violated Solis's confidences or that the confidential information from Struble's prior representation has not been and cannot continue to be adequately screened from the attorneys prosecuting Solis's case. Disqualification of the entire DA's Office under these circumstances is an abuse of discretion.
¶37 Finally, if allowed to stand, the trial court's reasoning—that another violation of the screening policy could potentially occur — would appear to require disqualification of the entire DA's Office as to any future prosecution of any of Struble's former clients, known or unknown, without any consideration of the special circumstances under section 20-1-107(2) that may or may not exist. Certainly, the disqualification of an entire DA's Office in this many — or any — cases without consideration of whether special circumstances exist is an outcome that is at odds with the rigorous analysis required by the disqualification statute.
III. Conclusion
¶38 For the foregoing reasons, we conclude that the trial court abused its discretion in granting Solis's motion to disqualify the DA's Office.5 Accordingly, we reverse the trial court's order and remand for further proceedings consistent with this opinion.
JUSTICE GABRIEL dissented.
JUSTICE GABRIEL, dissenting.
¶39 The majority concludes that the trial court abused its discretion when it disqualified the district attorney's office, after warning the district attorney that any further violations of his office's ethical screening policy would not be tolerated and then another violation came to light. Maj. op. ¶¶ 4, 33. Because I perceive no abuse of discretion on either the facts or the law here, and because I worry about the effect that the majority opinion will have on our trial judges’ authority to manage their courtrooms, I respectfully dissent. I. Factual Background
¶40 The material facts of this case are not in dispute.
¶41 The People charged defendant Jorge Solis with first degree murder, first degree trespass, and attempted first degree arson, and public defender Darren Struble and one of his then-colleagues entered their appearances for Solis.
¶42 Struble continued to serve as counsel for Solis for approximately one year, until he joined the Gunnison, Colorado office of the District Attorney for the 7th Judicial District, which is the office that filed the charges against and is prosecuting Solis.
¶43 It appears undisputed that during his representation of Solis, Struble gained client confidences from him, participated in plea negotiations with the district attorney's office on his behalf, filed motions as his counsel, and accessed discovery in that capacity. It also appears undisputed that Struble appeared on Solis's behalf at most of the hearings in this case from the time he entered his appearance in March 2021 until his departure from the public defender's office approximately one year later, less than two months before Solis's then-scheduled trial.
¶44 Just before Struble joined the district attorney's office, that office adopted an ethical screening policy. Among other things, this policy prohibited any employee from (1) participating in cases involving the prosecution of the employee's former clients; (2) accessing a former client's file; (3) consulting with the prosecutor or any staff member involved in the prosecution of the employee's former client; (4) conveying to any member of the district attorney's office any confidential information revealed to the employee during their representation of the former client; and (5) attending or representing the district attorney's office for any court dates, no matter how minor in nature, regarding the former client. In addition, the district attorney obtained from the judicial department a list of 120 people whom Struble had represented as defense counsel, and Struble himself added names to that list.
¶45 Based on the size of the Gunnison district attorney's office (then two and now three attorneys), Struble's work in this case, and the district attorney's having recruited Struble just before trial, Solis moved to disqualify the entire district attorney's office pursuant to section 20-1-107, C.R.S. (2022), and the trial court's inherent authority. The court conducted a hearing on this motion, and at this hearing, no one disputed that Struble could not be involved in this case. Rather, the question was whether the entire office had to be disqualified. District Attorney Seth Ryan stated that he had blocked Struble from accessing the electronic files in this and other cases in which Struble had been defense counsel. In addition, Ryan stated that the office's conference room was dedicated to this case and that Struble had no access to that room.
¶46 Notwithstanding these assurances, the trial court expressed concerns regarding the effectiveness of this screening policy. In particular, the court noted that Struble's office was next to that of the chief deputy who is prosecuting this case and that the doors of the break room in the office and the above-described dedicated conference room are "perhaps 20 feet apart, they share a portion of a wall and the rooms and walls are not soundproof." The court further observed that, at the time, there were only two attorneys in that office. And the court noted its "serious concern" regarding a conversation that Struble had had with a defense investigator, which occurred after Struble had joined the district attorney's office. This conversation occurred when the investigator appeared at the district attorney's office to serve subpoenas on each of the prosecutors in the office in connection with Solis's disqualification motion. Struble went out to meet the investigator, and Struble told the investigator that a prosecutor on this case (Josh Dougherty) was not agreeing to accept service, would need to be formally served, and was researching whether he and the lead prosecutor on the case could continue to prosecute it if they were subpoenaed and called as witnesses. Although the court found that Struble's actions likely only benefitted Solis, it "put in question ... the effectiveness of the efforts to cordon off Mr. Struble from all aspects of the Solis case." Describing this incident as a "lapse," the court warned the district attorney's office, "No further lapses even of things as minor as this situation can occur."
¶47 In the meantime, during Struble's first week in the district attorney's office, he appeared as counsel on two cases in which he had previously represented the defendant. Notably, while he was with the public defender's office, Struble had appeared in court on behalf of this defendant more than ten times in those same cases. Nonetheless, Struble handled the resentencing hearing in those cases as co-counsel for the People. Although the majority appears to fault the public defender's office for this significant error (crediting the district attorney's assertion that the public defender's office never informed the People that Struble had previously represented the defendant in that case), Maj. op. ¶ 17, in my view, it was Struble's responsibility to know that the person standing across from him was his former client and to ensure that the list of his former clients that the district attorney had obtained was accurate.
¶48 Upon learning of these additional violations of the district attorney's screening policy, Solis asked the court to reconsider its order denying Solis's motion to disqualify the district attorney's office. The trial court conducted another hearing and found that these additional screening policy violations warranted disqualifying the entire district attorney's office. The court premised its ruling on the fact that the deviations from the screening policy "suggest[ ] the potential, if not likelihood, of further such instances and delays in the resolution of this case," as well as "the likelihood of further motions reciting further violations of the Policy as to other former clients."
¶49 The district attorney then filed this interlocutory appeal.
II. Analysis
¶50 I begin by setting forth the pertinent legal standards. I then proceed to explain why I perceive no abuse of discretion here and why I am concerned about the consequences of the majority's ruling for trial courts endeavoring to exercise their discretion.
A. Pertinent Legal Standards
¶51 Section 20-1-107(2) provides, in pertinent part:
A district attorney may only be disqualified in a particular case at the request of the district attorney or upon a showing that the district attorney has a personal or financial interest or finds special circumstances that would render it unlikely that the defendant would receive a fair trial. ... The motion shall not be granted unless requested by the district attorney or unless the court finds that the district attorney has a personal or financial interest or special circumstances exist that would render it unlikely that the defendant would receive a fair trial.
¶52 A party moving to disqualify a district attorney's office based, as here, on "special circumstances" bears the burden of showing that absent disqualification, the movant will not receive a fair trial. People v. Arellano, 2020 CO 84, ¶ 24, 476 P.3d 364, 368.
¶53 To establish the requisite special circumstances, the movant must provide evidence, and not simply hypothetical information, supporting the disqualification. Id. Moreover, "in deciding whether special circumstances render a fair trial unlikely, a court need not (and ordinarily should not) evaluate the facts before it in isolation but rather may properly consider all of those facts together to determine whether a defendant will receive a fair trial." Id. at ¶ 30, 476 P.3d at 369. In this regard, we have deemed relevant "the size and degree of integration of the district attorney's staff," People v. Garcia, 698 P.2d 801, 807 (Colo. 1985), as well as the efficacy of the district attorney's ethical screening policy, see People v. Chavez, 139 P.3d 649, 654-55 (Colo. 2006).
¶54 In addition to the foregoing, a district court has an inherent right to disqualify a district attorney's office to ensure the integrity of the fact-finding process, the orderly and efficient administration of justice, and public trust and confidence in our criminal justice system. Garcia, 698 P.2d at 806. We have expressed particular concern when, as here, a defendant's prior counsel joins the district attorney's office that is prosecuting the defendant:
The potential for unfairness that results when an attorney in the district attorney's office has had an attorney-client relationship with the defendant is equally present when an employee of the district attorney's office has gained confidential information about the defendant's cases through his employment with an attorney who consulted with the defendant. In either case, there is a distinct possibility that confidential information could be used to the advantage of the government. People v. Manzanares, 139 P.3d 655, 659 (Colo. 2006).
¶55 "District courts have broad discretion in determining whether to disqualify a district attorney's office from prosecuting a case." Arellano, ¶ 21, 476 P.3d at 368. A district court abuses this discretion when its decision is "manifestly arbitrary, unreasonable, or unfair" or when it misapplies the law. Id.
¶56 The question of whether a district attorney's office has a screening policy that is sufficient to obviate any special circumstances, in turn, presents a fact question for the trial judge. Chavez, 139 P.3d at 654. We review questions of fact for clear error and will reverse only if the court's findings are unsupported by the record. See Lo Viento Blanco, LLC v. Woodbridge Condo. Ass'n, 2021 CO 56, ¶ 17, 489 P.3d 735, 740-41.
B. Application
¶57 Applying the foregoing principles here, I see no abuse of discretion by the trial court.
¶58 As noted above, the court properly considered all of the facts and circumstances before it, including the small size and integration of the district attorney's office, the length of Struble's prior representation of Solis, and the seriousness of the charges at issue, which include first degree murder.
¶59 The court also rightly considered the fairness of Solis's trial, the orderly administration of justice, and the need to ensure the public's trust and confidence in our criminal justice system. These factors were particularly significant here, given that the trial court found, with substantial record support, that the district attorney's screening policy was inadequate and had failed on multiple occasions.
¶60 And the court's decision to disqualify the district attorney's office should not have come as a surprise to anyone. The court expressly warned the district attorney that no further lapses in the screening policy could occur, and when another lapse came to light, the court followed through and disqualified the district attorney's office.
¶61 In these circumstances, I cannot say that the trial court's decision to disqualify the then-two-lawyer district attorney's office was manifestly arbitrary, unreasonable, or unfair. Nor do I perceive any basis on which to conclude that the court misapplied the law. To the contrary, I believe that the court's decision was a proper exercise of its broad discretion in this area, and I would not second-guess that decision here.
¶62 For a number of reasons, I am not persuaded by the majority's decision to the contrary.
¶63 First and foremost, Solis, who is facing first degree murder charges, among others, will be forced to sit through trial wondering what confidential information his former counsel might have conveyed to his new colleagues in the district attorney's office, even if that information was conveyed inadvertently. Given that the stakes are so high for Solis here, I would err on the side of caution and affirm the trial court's decision to have unquestionably conflict-free prosecutors come in to try this case.
¶64 Second, the majority appears to rely heavily on its perceptions that (1) Struble's appearance for the People in a resentencing proceeding involving his own former client was not pertinent to this case (again unduly laying the blame for Struble's action and the potential for further deviations from the screening policy at the feet of the public defender's office), and (2) the trial court inappropriately relied on hypothetical information in its order disqualifying the district attorney's office. See Maj. op. ¶¶ 33-36. In my view, the majority misunderstands the trial court's ruling. At the initial hearing on Solis's motion to disqualify the district attorney's office, the trial court expressed significant concerns regarding the efficacy of the district attorney's screening policy. These concerns were based on the physical layout of the office, the fact that there were only two attorneys in that office, and an ethical "lapse" (Struble's conversation with a public defender's investigator) that had occurred. The court expressly warned the district attorney's office, "No further lapses even of things as minor as this situation can occur." And then the court learned of another lapse, namely, Struble's appearance for the People in a resentencing hearing involving his own prior client. It does not matter that this hearing had occurred prior to the later lapse with the investigator and in another case. When the court learned of this additional lapse, it was persuaded that the district attorney's screening policy was ineffective, and it followed through on its warning that no further lapses could occur.
¶65 Nothing about the foregoing is hypothetical. In a very short time span, the record showed two failures of the district attorney's screening policy, one of which (appearing as counsel against one's own former client in the same proceeding in which counsel represented the client) was extremely serious. On such facts, I believe that the trial court's factual determination that the screening policy was ineffectual (and that further deviations were likely) was amply supported by the record, and I see no basis to conclude that the court's decision to disqualify the district attorney's office on the specific facts presented was an abuse of discretion.
¶66 Finally, I am concerned about the message that the majority's ruling conveys to our colleagues on the trial bench regarding their authority to manage their courtrooms. If warning parties that further misconduct will not be tolerated and following through on that warning constitutes an abuse of discretion, then it is difficult for me to discern the limit to this court's authority to second-guess discretionary decisions made by our trial courts. I fear the effect that such a precedent will have on trial judges called on to make difficult discretionary rulings.
III. Conclusion
¶67 For these reasons, I perceive no clear error in any of the trial court's factual findings and nothing in the trial court's decision to disqualify the district attorney's office that was manifestly arbitrary, unreasonable, or unfair so as to constitute an abuse of discretion.
¶68 Accordingly, I would affirm the trial court's order disqualifying the district attorney's office, and thus, I respectfully dissent.
1 Under the Colorado Rules of Professional Conduct, "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client ...." Colo. RPC 1.9(a).
2 In its ruling, the trial court specifically noted that the PD's Office had declined to comment on the list's accuracy, taking the position that it was not its responsibility to provide this information to the DA's Office.
3 Prior to its amendment in 2002, we interpreted the statute to require disqualification if there was an "appearance of impropriety." See, e.g., People v. C.V., 64 P.3d 272, 274 (Colo. 2003) ; see also Ch. 210, sec. 4, § 20-1-107, 2002 Colo. Sess. Laws 758–59. In People in Interest of N.R., 139 P.3d 671, 675 (Colo. 2006), however, we made it clear that the 2002 amendment to section 20-1-107 eliminated the appearance of impropriety standard and that the circumstances enumerated in the statute were the only bases for disqualifying the district attorney. See People v. Perez, 201 P.3d 1220, 1229 (Colo. 2009) ("[T]he statute enumerates the only circumstances under which a district attorney may be disqualified." (emphasis omitted)); People v. Loper, 241 P.3d 543, 546 (Colo. 2010) (same).
4 Of course, disqualification of an elected district attorney in this context results in the disqualification of his or her entire office.
5 Consistent with the trial court's order, we limit our analysis to the most recent incident in question — Struble's violation of the screening policy with regard to Mr. Flores-Molina. The May 3, 2022 incident with the investigator, in which Struble did not disclose any information about Solis, does not affect our analysis.